Burns, Respondent, vs. Weyker and others, Appellants. [No. 80.]

Weyker and another, Respondents, vs. Glew and others, Appellants. [No. 81.]

Beetham and another, Respondents, vs. Weyker and another, Appellants. [No. 82.]

*April 4—June 4, 1935.*

For the appellants Weyker and Farmers Mutual Automobile Insurance Company there was a brief by *Sanborn, Blake & Aberg, Ernest H. Pett,* and *George G. Blake,* all of Madison, and oral argument by *Mr. Pett* and *Mr. Blake.*

For the appellants Beetham Brothers and Wisconsin Automobile Insurance Company there was a brief by *Lockney & Lowry* of Waukesha, and *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *Victor D. Werner* and *Jefferson D. Burrus,* both of Milwaukee of counsel, and oral argument by *Mr. Werner, Mr. Burrus,* and *Mr. Henry Lockney.*

*Timothy T. Cronin* of Oconomowoc, for the respondent.

For the appellants there was a brief by *Grelle & Schlotthauer* of Madison, and oral argument by *George McD. Schlotthauer.*

For the respondents there was a brief by *Lockney & Lowry* of Waukesha, and *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *Victor D. Werner* and *Jefferson D. Burrus,* both of Milwaukee of counsel, and oral argument by *Mr. Werner, Mr. Burrus,* and *Mr. Henry Lockney.*

For the appellants there was a brief by *Sanborn, Blake & Aberg, Ernest H. Pett,* and *George G. Blake,* all of Madison, and oral argument by *Mr. Pett* and *Mr. Blake.*

For the respondents there was a brief by *Lockney & Lowry* of Waukesha, and *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *Victor D. Werner* and *Jefferson D. Burrus,* both of Milwaukee of counsel, and oral argument by *Mr. Werner, Mr. Burrus,* and *Mr. Henry Lockney.*

ROSENBERRY, C. J.    Upon the appeal of Lawrence Wey-ker and Edward Weyker from the several orders granting a new trial, the order of the trial court is affirmed.    The order was granted by the trial court upon proper motions and after argument in the interest of justice.    This rule has been so frequently announced and so thoroughly and exhaustively discussed that no useful purpose can be served by a rediscus-

sion of it in connection with the evidence in these cases. *Sichling v. Nash Motors Co.* 207 Wis. 16, 238 N. W. 843; *McCoy v. Terhorst,* 188 Wis. 512, 205 N. W. 420; *Mellor v. Heggaton,* 205 Wis. 42, 236 N. W. 558.

After the appeal had been taken, counsel for Beetham Brothers made a motion in this court to review the order of the trial court denying the motion of Beetham Brothers in Nos. 81 and 82 for judgment notwithstanding the verdict on the ground that Beetham Brothers were entitled to judgment in their favor in each of the cases upon the evidence as a matter of law. This is in accord with the practice indicated in *Julius v. First Nat. Bank of Appleton,* 216 Wis. 120, 256 N. W. 792.

The accident occurred on August 28, 1932. Edward Weyker was the owner of a 1929 Dodge sedan, which on that day he loaned to his brother, Lawrence Weyker. Lawrence Weyker invited the plaintiff to go out for the evening. They left about 10 o'clock p. m., and shortly afterward picked up Mr. and Mrs. Hasselkus. The four drove to a roadhouse located about six miles east of Waukesha, where they remained from one to two hours, leaving about 1 o'clock a. m. When they left they drove westerly on Highway No. 59. Lawrence Weyker occupied the driver's seat on the left, and Miss Burns sat by him on the right side in the front seat. Mr. and Mrs. Hasselkus sat in the rear, Mr. Hasselkus behind the plaintiff and Mrs. Hasselkus behind the driver. Their estimate of the speed at which they were traveling is thirty to thirty-five miles per hour. Other witnesses who saw the car near the scene of the accident testified that it was traveling at a higher speed. Highway No. 59 is surfaced with a concrete pavement, was dry, and the weather was clear. A man by the name of Haberle was driving a truck loaded with livestock, proceeding in an easterly direction from the city of Waukesha. His truck was followed by the Beetham

Brothers' Chevrolet one and a half ton truck driven by Glew, the Beetham Brothers' truck maintaining a distance of fifty to one hundred feet to the rear of the truck driven by Haberle. Three disinterested witnesses testified that the Dodge car just shortly before it reached the place of the accident about one-half mile west of the roadhouse was zigzagging from side to side. Ross and Krueger, who met the Weyker car about a thousand feet to the east, stated that as it passed them they had to pull to the right to avoid it; that in its zigzag course at times the car was over the black line of the highway and so on the wrong side of the road. Lawrence Weyker, the driver, admitted that he stated upon his adverse examination that he turned off from his own side of the road two or three times in the last half mile, but explained that it was done to avoid bumps and cracks. Haberle, the driver of the first truck, testified that the Dodge car approached him at a speed of fifty miles per hour; that its position in the road was such that he had to pull far over to the right so that his right front wheel was off the shoulder, and that the left front wheel was at least five feet south of the black center line, in order to let the car driven by Weyker pass; and that at the moment it passed him the Weyker car was partly over the black center line of the highway. The trucks were proceeding at a speed of about thirty miles per hour. Just before the trucks reached the place of the accident, they ascended a slight upgrade, and, because of the crest of the hill and the truck ahead, Glew did not see the lights of the Weyker car until shortly before the accident. Glew, however, noticed Haberle pulling to the south or his right side of the road, and supposing he had a puncture or some trouble he pulled over to his right to draw in behind. He then saw the Weyker car coming around the truck, just missing the rear end of the Haberle truck. Glew attempted to turn his truck sharply to the right off the concrete in order to avoid the Weyker car.

It appears without dispute that the front left part of the Weyker car struck the truck on its left side at or about the front wheel, breaking the wheel off, bending the frame, smashing the fender, knocking the cab from the chassis, and striking the rack on the Beetham Brothers' truck. The blow overturned the truck. After the collision the Dodge car was fifteen to twenty feet west of the Beetham Brothers' truck. It was lying on its side, was at right angles to the highway, the front of the car facing south. The rear half of the car was north of the center line, and the front half of the car was to the south of the center line. Beetham Brothers' truck after the accident was lying on its right side on the south side of the road, facing diagonally east; the front right wheel and body of the truck being off or nearly off the concrete and on the gravel shoulder, and the rear wheel right at the edge of the concrete. There was no skid marks of the truck or cars seen by anyone. The Beetham Brothers' truck was loaded with a heavy rack in which were hogs weighing two thousand nine hundred pounds. After the accident there was glass and dirt on the center of the road on both sides of the black line. Lawrence Weyker testified that as he approached the place of the accident he was blinded by the lights of the Haberle truck; that just prior to the time when the glare struck him he was driving in the customary center of the right-hand (north) lane. Plaintiff testified, though with evident hesitation and doubt, that the Weyker car was on its right side of the concrete just before the collision. Mr. Hasselkus testified: "As I recall, we were on the right-hand side of the road at that time." This he admitted was based on an observation made some seconds before the collision took place. There is sufficient evidence in the record which, if believed and uncontradicted, would sustain the finding of the jury that Glew, the driver of the Beetham Brothers' truck, was negligent in reference to keeping his own right

side of the road. The jury found that he was not negligent as to lookout or as to speed.

The question presented for decision is whether or not the physical facts which are established beyond reasonable dispute are such as to make the evidence sustaining the verdict incredible. *Samulski v. Menasha Paper Co.* 147 Wis. 285, 133 N. W. 142; *Holborn v. Coombs,* 209 Wis. 556, 245 N. W. 673; *Musbach v. Wisconsin Chair Co.* 108 Wis. 57, 84 N. W. 36.

The testimony of the plaintiff and Lawrence Weyker is to the effect that the lights on the Haberle truck blinded them as they approached the scene of the accident. Hasselkus said that at the time of the collision he did not know definitely where the Weyker car was with reference to the black line. The distance between the Haberle truck and Beetham Brothers' truck at the time of the collision was approximately fifty feet. The evidence as to the location of the trucks after the accident is undisputed or at least without substantial dispute. Such dispute as there is results from a statement made by Mr. Hasselkus. He said immediately after the accident he got out of the car and by the light of the Weyker car reflected on the night air be observed that the rack was about half on the concrete. He then assisted the others out of the car and went with them to the hospital. The testimony of all the other witnesses, including two disinterested persons, who went there to see what happened, is that the Beetham Brothers' truck was on its right side tipped to the south with the front wheel off the concrete and the rear wheel on. Hasselkus no doubt saw the rear end of the rack as the Weyker car was directly to the rear of the Beetham Brothers' truck after the accident. The gross weight of Beetham Brothers' truck is not given, but it probably exceeded three thousand pounds without the rack. It had on it a rack in which were two thousand nine hundred pounds of live hogs. The photo-

graphs, defendant's truck, Exhibits 2 and 3, are reproduced herewith. .

EXHIBIT 2.

EXHIBIT 3.

If the Beetham Brothers' truck had been on the north side of the center line of the concrete, and the Weyker car had been in the center of its lane of travel as plaintiff contends, it would have been a physical impossibility for the accident to have happened, as it must have happened in order to produce the damage to the truck disclosed by the photographs and the uncontradicted testimony.

The photograph of the Weyker car, reproduced herewith (Defendant's Exhibit 6) does not so clearly show the nature

EXHIBIT 6.

of the blow struck, but there is nothing in its condition inconsistent with the inferences necessarily to be drawn from the condition of the Beetham Brothers' truck. It could not have moved more than a very short distance, if at all, between the time it was struck and the time it overturned on its side when

forward motion would have been impossible. There was no evidence of marks showing that the truck was pushed to the south. It appears from the evidence that it overturned at once after the collision. The evidence as well as the physical condition of the cars, as disclosed by the photographs of the cars taken after the accident, show that the collision was not what is ordinarily termed a "sideswiping." The Weyker car struck the truck at a considerable angle to the line of travel of the truck. It must have done so to bend the frame. The condition of the front wheel, the front fender, the fact that the cab was knocked loose from the chassis, the bending of the truck frame, and the damage to the corner of the rack, indicate conclusively that the blow which caused the damage was at a considerable angle to the line of travel of the Beetham Brothers' truck. There is no dispute but that after the accident the Weyker car lay at right angles to the center line, the front of the car pointing to the south. There is some dispute as to whether it was on its right or left side. If the Beetham Brothers' truck had been traveling on the wrong side of the highway, and according to the testimony supporting the plaintiff's contentions if it had not been so traveling, the accident could not have happened, it would have been a physical impossibility for the Weyker car to land where it did, or if not impossible highly improbable. If the Weyker car had collided with the rear of the truck, the situation would be quite different. The photographs show that the front end of the Weyker car was down and was subject to no control after the collision. The testimony of Weyker that he attempted to turn an instant before the collision may be true, but he had not turned sufficiently so that the rear of his car in any way came in contact with the truck. This appears from the photograph of the Weyker car. While the blow struck by the Weyker car was at an angle, the force of the blow was such as quite apparently to cause it to glance and slide along the left side of the truck and so come in contact with the rack.

From these and other circumstances which appear in the evidence it is considered that the testimony tending to support the plaintiff's case is so contradicted by the established physical facts as to be incredible. It may have been and no doubt was honestly given. Accidents of this kind cover a very small space of time. Observations made under such circumstances are from the very nature of things imperfect and incomplete. It is entirely possible that the driver of the Weyker car during the time that he was passing through the "blinded" area produced by the lights of the first truck somewhat varied his line of travel. There is evidence from which it might be inferred, although not a necessary inference, that he did not see the Beetham Brothers' truck until just an instant before the collision. He may have been turning back more into the center of the highway than he thought he was doing and so gotten over the black line and came in contact with the Beetham Brothers' truck. Many things might have happened, but that the accident happened on the south side of the highway, and that the truck was in its proper lane over to its right side, is established beyond any reasonable controversy. With that fact established, the testimony that the Weyker car was on its own or right side of the highway is made incredible.

There remains one other matter for consideration. It is undisputed that the width of the rack on the Beetham Brothers' truck was such that under the statute (sec. 85.06 (2) (c), Stats.) it should have been equipped with a clearance light and that it had no clearance light. The failure to provide clearance light constituted negligence as a matter of law. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97. However, that constitutes no ground of liability unless the negligent act operated to cause or contribute to the injury complained of. It is undisputed that the lights on the Beetham Brothers' truck were sufficient, in good working order, and lighted. The testimony of Weyker, who was driving the Weyker car, is that the first thing that he saw of the

Beetham Brothers' truck was the rack. He saw that before he saw the lights on the Beetham Brothers' truck. The purpose of the statute requiring clearance light to be carried is to warn other travelers of the position of the rack. Weyker had that warning, therefore the failure to carry a clearance light could not have contributed to the collision. The jury having acquitted Glew of negligence as to lookout and speed, and he being free from negligence as to keeping his right side of the highway, and the failure to carry clearance lights having no causal connection with the injuries sustained by Miss Burns or the Weykers, a verdict should have been directed in favor of Glew, Beetham Brothers, and the Wisconsin Automobile Insurance Company.

*By the Court.*—In Case No. 80, upon the appeal of Lawrence Weyker and Edward Weyker, the order granting a new trial is affirmed. Upon the appeal of Beetham Brothers and the Wisconsin Automobile Insurance Company in Case No. 80, the order granting a new trial is reversed, and cause remanded with directions to dismiss the complaint as to Beetham Brothers and the Wisconsin Automobile Insurance Company.

In Case No. 81, upon the appeal of Edward Weyker and Lawrence Weyker, the order appealed from is affirmed. Upon the motion of L. T. Glew, Beetham Brothers, and the Wisconsin Automobile Insurance Company, the order is reversed, and the cause remanded with directions to dismiss the complaint.

In Case No. 82, upon the appeal of Lawrence Weyker and the Farmers Mutual Automobile Insurance Company, the order appealed from is affirmed. Upon motion of Beetham Brothers for a review, the order granting a new trial is reversed, and cause remanded with directions to enter judgment for the plaintiffs upon the verdict.

FOWLER, J. (*dissenting in part*). I concur in the decision of the court in so far as it affirms the order of the circuit

court granting a new trial in the interest of justice, but dissent from the portion directing dismissal of the action as to the driver and owner of the truck.

The opinion of the court states:

"There is sufficient evidence in the record which, if believed and uncontradicted, would sustain the finding of the jury that Glew, the driver of the Beetham Brothers' truck, was negligent in reference to keeping his own right side of the road. . . . The question presented for decision is whether or not the physical facts which are established beyond reasonable dispute are such as to make the evidence sustaining the verdict incredible."

The direction for dismissal of the action as to the driver and owner of the truck is based upon the assumption that the physical facts are such as to preclude the inference drawn by the jury that the truck invaded the north (the truck's left) side of the road. This assumption is not warranted. The evidence of a disinterested witness as to one physical fact supports the inference drawn by the jury. This witness came from the east in an automobile to the place of the collision shortly after it occurred. He testified as follows as to the presence on the road of débris from the collision:

"I . . . observed considerable dirt within a foot or 18 inches of the black [center] line [of the road], and on my right [north] side of the road. There was a lot of glass. . . . The dirt was to the north of the black line. It was dirt and grease and glass. There was some on the other side too, but not as much as on the north side. . . . I can't say the furthest distance to the south of the black line at which there was dirt. It was right around the black line. . . . The dirt did not extend clear to the north edge of the concrete, but was about five feet in diameter on both sides of the black line."

The photographs show that the left fronts of the car and truck collided. The jury might properly infer that the place of the most dirt was the point of the impact and that this was to the north of the center of the road. There is nothing

in the physical facts other than the location of the débris that in my view renders this inference unreasonable.

The conclusion of the court from the physical facts is for the most part based upon the position of the cars after the collision. As to this—

". . . this court has heretofore had occasion to remark, in *Glatz v. Kroeger Bros. Co.* 168 Wis. 635, 170 N. W. 934, that when two automobiles come together on the highway a lot of surprising consequences flow, and an attempt to estimate the results of the forces involved, in such a way as to give a single interpretation to the physical facts, is always difficult and frequently impossible." *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 101, 244 N. W. 757.

It is impossible for me, giving full scope to my limited powers of imagination and reasoning, to draw from the respective positions of the truck and the automobile here involved, the conclusion that the truck could not have been encroaching upon the north side of the road at the moment of impact. If that conclusion cannot be drawn, the portion of the decision herein directing dismissal is erroneous.

I am authorized to state that Mr. Justice FRITZ and Mr. Justice NELSON concur in this opinion.