STRNAD, Respondent, vs. CO-OPERATIVE INSURANCE MUTUAL, Appellant. [Case No. 126.]

MELESKI, Special Administrator, Appellant, vs. STRNAD and another, Respondents. [Case No. 127.]

*December 2—December 30, 1949.*

For the appellants there was a brief by *Krueger & Plier* of Oconto, and *J. Emmet McCarthy* of Marinette, and oral argument by *James H. Plier*.

· For the respondent in Case No. 126 there was a brief by *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

For the respondents in Case No. 127 there was a brief by *Byrne, Bubolz & Spanagel* of Appleton, and oral argument by *Eugene E. Behling* of Oconto Falls.

ROSENBERRY, C. J.   About 12:15 a. m. on April 26, 1948, Strnad drove his Ford car east on Highway 22 to its intersection with Highway 141 at Stiles Junction.   He then turned south or to his right onto Highway 141, a concrete-surfaced highway twenty feet wide, except for a stretch of black-top a short distance south of where the collision in question took place.   He was driving, according to his testimony, at a speed of about forty to forty-five miles an hour.

The deceased, Donald Meleski, was driving his 1948 Chrysler car north from Stiles village along Highway 141 at a speed at some points estimated to be eighty to ninety-five miles an hour.

The collision occurred approximately sixty-four feet north of the edge of the black-top near a sign "Tractors with lugs prohibited."   As a result of the collision Meleski was killed and Strnad was seriously injured.   No questions were submitted to the jury except those involving a determination whether either or both of the parties invaded the lane of the other party.   The cars came to rest, the Meleski car on the east shoulder facing southwest, Strnad's car came to rest on the west shoulder of the highway facing northeasterly.   Ex-

Exhibit D

Exhibit G

hibit "D" reproduced herewith, shows the location of the Strnad car and the sign. Exhibit D was taken between two and half past two o'clock on the morning of the accident, the camera facing south. The Strnad car was in the position it was in when the photographer arrived at the scene shortly after the collision. There is no contention that the Strnad car had been moved between the time of the collision and the taking of the photograph. The letter "T" near the bottom of Exhibit D indicates the end of a tire mark which began about four feet east of the center line (See Ex. G), and extended southwesterly to a point near the Strnad car.

Referring to Exhibit D, the letter "S" to the north indicates the point where there was scraped concrete. It proceeded across the highway and there were chipped areas around on the east end of the large gouge. The large gouge began about three or four feet east of the center line. The photographer testified that he saw oil marks on the highway. The letter "O" indicates the location of the oil on the surface of the concrete.

Exhibit G reproduced herewith is another photograph of the highway at the scene of the accident taken the morning of the 26th, about nine o'clock, facing north. The letter "T" to the north indicates the beginning of the tire mark, the south end of which is indicated on Exhibit D. The letter "S" indicates the beginning of the scrape on the concrete. The letter "O" on Exhibit G indicates the presence of oil.

Referring now to Exhibit A, a map reproduced herewith on a reduced scale for illustration, it appears from the testimony and the map that the scrape, or gouge referred to, began three or four feet east of the center line of the highway and about twenty feet north of a point opposite the lug sign and extended southwesterly to a point near the Strnad car, the exact distance not appearing. From the evidence it appears that the cars were sixty-five feet apart after they came to rest.

EXHIBIT A

The entire front end and particularly the left front corner of Strnad's Ford was badly damaged. The valley plate on Strnad's motor which keeps the oil from splashing over the motor was broken. The frame was broken back of the motor.

The entire left side of Meleski's Chrysler was badly damaged but most of the impact was at the cowl ahead of the door. The motor and transmission of the Meleski Chrysler were not damaged and did not leak oil or water. The left front tire of the Strnad car was flat. There was no flat tire on the Chrysler.

From the testimony of other witnesses it appears that the scratch mark or gouge in the concrete was forty-two inches east of the center line. There were splashes of oil on the concrete almost on the east edge of the concrete. The oil splashes were three feet east of the gouge in the concrete. There were oil marks from the center of the road that ran southwest and ended close to the west edge of the concrete. The oil mark followed the scratch southwest and ran across the west lane. The glass, mud, and debris were on the east side of the road. In the vicinity of the Chrysler there wasn't any glass or debris on the west half of the road.

On the trial Strnad testified as follows:

There is a slight angle on the road all the way up (this refers to a time when he was traveling south toward the scene of the collision). I had my headlights on bright when I first saw the car coming from the south toward me. I did not leave them on bright until after the collision. I switched them right on dim as soon as I saw his lights. I do not know how far I was from that other car at the time I switched on my dimmers. I did that in the fraction of a second. That is all I did was to put on my dimmers. I did not turn my wheel one way or the other. I did not change my position on the road at all. I went in the same direction. I knew there was a slight grade in the highway there.

He also testified substantially as follows:

The accident happened just north of the black-top, about two or three car lengths I would say. My car was on the concrete. I don't know how near the north edge of the black-top was when I first saw an approaching car from the south. I could see this car (Meleski's) before the crash occurred for

a second or a fraction of a second before it hit me. I was driving about forty to forty-five miles per hour and the first time that I saw the headlights of the car approaching me was a second or less than a second before the crash occurred. *Q.* He was coming down on you? *A.* Well, coming up at me; it is upgrade there. He was right in the center of the road. I have no idea how far away it was when I first saw it but I am positive that it was in the center of the road. I was not in the center of the road. When I say it was in the center of the road I mean the center of that automobile was over the black line, was already coming along the black line—half of his car was over the center of the road on my side. I mean to tell you that there was a second or less than a second from the time I first saw these headlights coming toward me and the time of the crash. I am sure about that and I am also sure that this other car was half way over the center line on my side of the road. At another point he testified: "As I proceeded after seeing those lights I could see the concrete highway very good. I could see the center line."

The case was submitted to the jury on a special verdict. By the first and second questions the jury found Donald Meleski causally negligent in respect to the position of his car on the highway. By the third and fourth questions the jury found that Elmer Strnad was causally negligent in respect to the position of his car on the highway. By the fifth question the jury assessed Strnad's damages at $6,241.60. By the sixth question the jury assessed the damages of the special administrator at the sum of $4,664. By the seventh question the jury apportioned the negligence, to Elmer Strnad sixty per cent, to Donald Meleski, forty per cent.

After verdict, in the case of Meleski, special administrator, vs. Strnad, the plaintiff and the Co-operative Insurance Mutual moved:

(1) For judgment on the special verdict as rendered by the jury.

(2) Alternative motions, (a) for an order changing the answers of the first and second questions of the special verdict from "Yes" to "No;" (b) changing the answer of subdivi-

sion (a) of the seventh question of the special verdict from sixty per cent to one hundred per cent, and changing the answer to subdivision (b) of the seventh question from forty per cent to zero, and for judgment on the amended verdict.

The attorneys for Strnad and Home Mutual Casualty Company moved in the alternative as follows:

(a) For an order striking the answer of the jury to questions 3 and 4, and to subdivisions (a) and (b) of question 7, and for judgment on the verdict as so amended.

(b) For an order correcting the answers to subdivisions (a) and (b) of question 7 to read (a) fifty per cent; (b) fifty per cent.

(c) For judgment dismissing plaintiff's complaint notwithstanding the verdict.

(d) For a new trial of this action because the verdict is contrary to the undisputed facts and is contrary to law.

In its memorandum decision from the bench on motions after verdict the trial court said, among other things:

"There is some evidence in the case, namely, the oral testimony of the plaintiff Strnad, that Donald Meleski, the driver of the other car that met in collision with the Strnad car, invaded the west half of the highway and failed to yield half of the traveled portion of the highway and there is an abundance of evidence, consisting of physical facts, to sustain the finding of the jury that Strnad invaded the east half of the highway, or his wrong side. *However, there is no evidence to sustain the findings of the jury that both drivers at the time of the collision had invaded the wrong side of the highway.*

"The verdict is a definite compromise and is obviously an effort on the part of the jury to do good to everybody. . . . I would, if I could, change the answers to the questions in the verdict finding Donald Meleski guilty of negligence as to the position of his car in the highway, but I am not permitted so to do because there is some evidence in the case to sustain that finding. There is likewise, as I have said, an abundance of evidence, consisting of physical facts, to sustain the finding that Strnad invaded, but there is no evidence that both of the cars had invaded the wrong side of the highway and that they met in collision some place in the middle of the highway."

The court then denied all of the motions made by all of the parties, except the motion of Strnad for a new trial, "which is granted in the interests of justice and on the ground that the verdict of the jury is contrary to the evidence and is definitely inconsistent."

From this order, entered on the 26th day of May, 1949, Steve Meleski, special administrator, and the Co-operative Insurance Mutual, appealed.

We shall first dispose of a preliminary question raised by counsel for Strnad and his insurance carrier. They contend that the appellants are not entitled to review of the evidence in the absence of a motion for a new trial. *Krudwig v. Koepke* (1936), 223 Wis. 244, 270 N. W. 79.

It is well established that on appeal from a judgment the court will not review the sufficiency of the evidence to sustain the judgment unless there has been a motion for a new trial.

The rule, however, does not apply where the trial court grants a new trial in the interests of justice when a verdict should have been directed. Under such circumstances the party who was entitled to judgment may have a review of the error of the court in granting the motion for new trial. *Crombie v. Powers* (1930), 200 Wis. 299, 227 N. W. 278.

It is the settled law of this state that errors committed by the court may be reviewed by the supreme court upon an appeal from the judgment in the absence of a motion for a new trial. *Sullivan v. Minneapolis, St. P. & S. S. M. R. Co.* (1918), 167 Wis. 518, 524, 167 N. W. 311.

In addition it may be said that the motions made by the appellants and respondents to change the answers to certain questions challenged the sufficiency of the evidence with respect to those parts of the verdict referred to.

The first question raised by appellants is that the court in granting a new trial in the interests of justice, proceeded upon an erroneous view of the law.

The court in its decision said:

"I would, if I could, change the answers to the questions in the verdict finding Donald Meleski guilty of negligence as to the position of his car in the highway, but I am not permitted so to do because there is some evidence in the case to sustain that finding."

The only ground upon which the trial court could change the answers would be that the finding of the jury as to Strnad's negligence was not supported by credible evidence. *Thorpe v. Landsaw* (1948), 254 Wis. 1, 8, 35 N. W. (2d) 307.

The court did not consider the question of the credibility of Strnad as a witness. Where human testimony is in direct conflict with established physical facts and common knowledge it is incredible and will not support the verdict of a jury. *Samulski v. Menasha Paper Co.* (1911), 147 Wis. 285, 133 N. W. 142; *Hunter v. Sirianni Candy Co.* (1939), 233 Wis. 130, 288 N. W. 766; *Holborn v. Coombs* (1932), 209 Wis. 556, 245 N. W. 673.

The question for decision is, Do the physical facts as established in this case render the testimony of Strnad incredible?

The following facts appear without dispute: Strnad while driving west of Stiles Junction on Highway 22, was followed by two cars to the scene of the accident. The first car was driven by Lee Winter, the second car by the witness Ernest Siegler.

Siegler testified as follows:

I followed that car (Strnad's) that pulled out from in front of the Windmill (a point on Highway 22 west of Stiles Junction). I followed it east on 22. I was about twenty yards, twenty-five yards behind the Ford that I was following. I did not observe it all the way down the highway from the time I left the Windmill. *Q.* Well, what was it doing? *A.* Well, it wasn't following its lane of traffic perfectly. By that I mean it cut over the center line a couple of times. The

Strnad car cut over the center line three or four times. When he first pulled out he went clear over on the opposite side of the road, then he went back on his own side. At that point Highway 22 runs east and west. At Stiles Junction it went south and at Stiles Junction I went south. When I got to the junction of Highways 22 and 141 at Stiles Junction the closest I got to the Strnad car was about the length of this room. From the time that I was traveling from Stiles Junction to the place where the accident took place there was no other traffic between my car and the Strnad car other than my brother-in-law's car.

Siegler paid no attention to the Strnad car between Stiles Junction and the place of the accident (his brother-in-law's car was ahead of him). Siegler testified to his movements immediately after reaching the scene of the accident substantially as follows:

Mr. Strnad was lying in front of his car here (indicating). I did not know it then at the time but afterwards I found out who he was. The Strnad car was right on the edge of the shoulder, on the west shoulder. It is in about the same position as is shown on that map and drawn by Eckberg. The Meleski car was over on the opposite side of the road north of it quite a ways. The Meleski car was on the east side of the concrete. It is approximately in the correct place as Mr. Eckberg has indicated on defendant's Exhibit A. Directing my attention to the concrete surface of the highway, as I walked across it with my flashlight I was watching the road. There was oil spilled on the road, and water. There was tire tracks and a chip out of the concrete. There was some oil marks or watermarks over on this side of the road a little ways from the east edge of the road, south of that crack in the road, and the other mark started about in the center of the line and went where the Strnad car was. That chip in the concrete was about three feet from the center of the road on the east side, and a little ways, a few inches or so, south of that crack in the concrete. Q. In what direction did the oil mark run? A. This oil mark on this side looked like kind of a splash. Well, this other oil mark from the center of the road followed southwest and ended pretty close to the west edge of the concrete.

Not all of the evidence can be set out but the following facts appear to be without substantial dispute:

After the collision there was a tire mark, the north end of which started about four feet east of the center line at a point north of where the Meleski car came to rest and ran south to where it crossed the center line near a gouge or scratch in the concrete. This scratch mark or gouge in the concrete was forty-two inches east of the center line, at the crack or patch line in the concrete that had been tarred. The concrete was chipped or scraped. The scraping started about three feet east of the center line and went in a diagonal direction to the west side of the road. There were splashes of oil on the concrete, almost on the east edge of the concrete. The oil splashes were three feet east of the gouge in the concrete. There were oil marks from the center of the road that ran southwest and ended close to the west edge of the concrete. The oil mark followed the scratch southwest and ran across the west lane in the direction of the Strnad automobile. The glass, mud, and debris were on the east side of the road. In the vicinity of the Chrysler car there was no glass or debris on the west half of the road. It is undisputed that the Meleski car did not leak either oil or water.

Considering all the testimony we concur in the conclusion of the trial court that there is no evidence to sustain the finding of the jury that Meleski invaded the west side of the highway except the testimony of Strnad. We further conclude that his testimony is in such direct conflict with the established physical facts that it is incredible.

On behalf of Strnad it is argued that the condition of the cars after the collision sustain Strnad's testimony.

Long experience has shown that in all except in a very few cases the position of the cars and their condition after a collision has very little, if any, probative value. We have examined the photographs of the cars and it is considered that

if the photographs have any probative value it sustains Meleski's position rather than that of Strnad.

Strnad's testimony being incredible, and there being no other evidence to support the finding of the jury that Meleski was negligent, the trial court should have granted the motion of Meleski, administrator, to change the answers to questions 1 and 2 from "Yes" to "No" and the answer to question 7 (a) from "60" to "100" and 7 (b) from "40" to "0," and granted judgment for Meleski, administrator, upon the verdict so amended. See *Samulski v. Menasha Paper Co., supra; Himebauch v. Ludtke* (1949), ante, p. 1, 39 N. W. (2d) 684. See also *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123.

*By the Court.*—The order appealed from is reversed and the record is remanded to the trial court with directions to vacate the order granting a new trial, to amend the verdict as indicated in the opinion, and give judgment to Meleski, administrator, upon the verdict as amended for the full amount of his damages, and dismiss the plaintiff Strnad's complaint.