HEIBEL, Respondent, vs. VOTH and another, Appellants.
[Two cases.]

*November 10—December 6, 1955.*

For the appellants there was a brief and oral argument by *D. J. Regan* of Milwaukee.

For the respondents there was a brief by *Joseph H. Swerdloff* of Milwaukee, for Ewald J. Heibel, individually, and by *Jesse Habush* of Milwaukee, for Ewald J. Heibel, administrator, attorneys, and *Howard A. Hartman* of Milwaukee of counsel, and oral argument by *Mr. Swerdloff* and *Mr. Hartman*.

CURRIE, J.   The collision between the Heibel and Voth automobiles occurred at approximately 10:30 p. m. on November 21, 1948, in Milwaukee county, at the intersection of South 76th street and Howard avenue. South 76th street runs in a northerly and southerly direction, Howard avenue runs in an easterly and westerly direction, and the two streets

intersect at right angles. It is undisputed that for some distance south of the point of accident the Voth automobile had been traveling north on South 76th street, but the evidence is in sharp conflict as to whether Heibel had been proceeding south on South 76th street immediately prior to the accident, or whether he was approaching such intersection from the west on Howard avenue.

Because of such conflict in the testimony, the trial court submitted the following as the first question in the special verdict: "Just prior to the collision was Ewald J. Heibel driving his car in a southerly direction on South 76th street and turning east on Howard avenue?" which question the jury unanimously answered "Yes."

The sole issue on this appeal is whether the undisputed physical facts were such as to render incredible the testimony submitted in behalf of the plaintiff Heibel, that he had been proceeding south on South 76th street prior to the accident. It is the contention of counsel for the defendants that the position of the two cars after the accident did render such testimony incredible thus leaving no support for the jury's answer of "Yes" to such first question of the verdict. The relief requested by the defendants on this appeal is either dismissal of the two actions on their merits, or, in the alternative, a new trial.

In *Samulski v. Menasha Paper Co.* (1911), 147 Wis. 285, 291, 133 N. W. 142, this court declared:

"The testimony of a witness or finding of a jury, contrary to unquestionable physical situations, or common knowledge, or conceded facts, is of no weight in favor of the side it is invoked to support, while it may be self-destructive,—be successfully impeached by its demonstrated utter improbability or impossibility."

Further decisions of this court holding to the same effect are *Haggerty v. Rain* (1922), 177 Wis. 374, 186 N. W.

1017; *Stryk v. Sydarowich* (1929), 198 Wis. 542, 224 N. W. 479; *Burns v. Weyker* (1935), 218 Wis. 363, 261 N. W. 244; and *Strnad v. Co-operative Insurance Mutual* (1949), 256 Wis. 261, 40 N. W. (2d) 552.

The attorneys for the plaintiff concede the soundness of the principle of law enunciated in these cases, but maintain that the physical facts relied upon by the defendants in the instant case fall far short of being the kind which would render incredible the testimony adduced in behalf of the plaintiff to establish that Heibel was proceeding south on South 76th street immediately prior to the accident.

It is elementary that, in passing on an issue of whether there is any credible evidence to sustain a jury finding which has been approved by the trial court, it is only necessary to consider such testimony and other evidence as supports the verdict. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740. On this appeal, therefore, we will recite chiefly the testimony that supports the jury's answer to the first question of the special verdict, and, in the light of such testimony, consider whether the undisputed physical facts necessarily render such testimony incredible.

South 76th street is an arterial highway having a black-top pavement 22 feet in width, while Howard avenue is a non-arterial highway having a concrete pavement 16 feet wide. There is nothing in the physical facts of this case to indicate where the point of impact occurred within the intersection, such as markings on the pavement, or the dropping of debris. After the accident the Heibel automobile was 56 feet northeast of the center of the intersection facing in a northeasterly direction, and was 17 feet 8 inches east of the east curb line of South 76th street; and the Voth car was slightly to the north of the paved portion of Howard avenue 14 feet 9 inches east of the east curb line of South 76th street and fac-

ing a trifle to the south of due east. The damages to the two vehicles established that the front end of the Voth car had struck the Heibel car from the side, the point of impact on the Heibel car being at the right front wheel or slightly to the rear thereof.

There were no marks to indicate any part of the path pursued by the Heibel car after it was struck to the point where it was found after the accident. The only two persons riding in the Heibel car at the time of the accident were Mr. and Mrs. Heibel. Mrs. Heibel was instantly killed and Mr. Heibel was rendered unconscious, and did not regain consciousness until after he reached the hospital following the accident. There was no testimony as to the course the Heibel car pursued after the impact. On the other hand, there was a skid mark 36 feet in length extending back into the intersection from the rear of the Voth car after it came to rest following the accident. This skid mark commenced about 9 feet south of the center of the intersection, proceeded north 9 feet 6 inches, and then veered to the northeast, but the record is silent as to the east and west position of the south 9 feet 6 inches of such mark with reference to the center of the intersection.

Heibel testified that prior to the accident he was driving south on South 76th street and as he approached the intersection with Howard avenue he could see the lights of the Voth car coming from the south. It was Heibel's intention to turn east on Howard avenue and he stated that he got partly into the intersection and then stopped his car to let the Voth car pass, and that the collision occurred while Heibel's car was so stopped. We quote the following questions and answers from Heibel's testimony:

"*Q.* Now, as you stood there upon the street, had you turned to the left or to the east at all? *A.* My car was partly turned east already.

"*Q.* Now, do you know how wide that street is, South 76th street? *A.* Yes. I think it is a 30-foot road.

"*Q.* All right. Now, if you—Were you in the west half or the east half of that road when you stopped? *A.* I was more in the west half.

"*Q.* And where was the automobile of the other driver of the other car? *A.* It was still coming. . . .

"*Q.* What half of the road was he [Voth] in when he struck you? *A.* He was not quite on his side. He was a little bit more in the center."

Heibel also testified that when he stopped his car after entering the intersection he shifted into low gear and had one foot on the clutch and the other on the brake pedal.

William Folack, a witness called in behalf of plaintiffs, testified that he had been driving his own automobile south on South 76th street the night of the accident and passed the Heibel car a short distance north of the intersection, at which time the Heibel car was traveling south on South 76th street. Folack further testified that Heibel was a friend of his whom he recognized at the time of such passing and that Folack had hollered at Heibel as he went by.

Voth was accompanied on the night of the accident by his wife, and both testified that the lights of the Heibel automobile were seen by them approaching from the west on Howard avenue just prior to the collision, and that the Heibel car did not stop for the arterial stop sign located near the southwest corner of the intersection. Voth, however, admitted that the front end of his car struck the side of the Heibel car at about the right front wheel, but stated that the Heibel car was proceeding across the path of his vehicle.

The gist of the argument advanced in behalf of the defendants is that the physical facts above enumerated, and, in particular, the position of the Heibel automobile after the accident, render entirely incredible any testimony that the plaintiff had proceeded south on South 76th street prior to the accident and

are only consistent with the testimony of Mr. and Mrs. Voth that the Heibel car was proceeding in an easterly direction on Howard avenue prior to, and at the time of, impact. We cannot agree with such conclusion.

It appears from the above-quoted testimony of Heibel that, upon entering the intersection, he had turned his car somewhat to the east. The jury could reasonably infer that, as a result of the impact, Heibel's foot was displaced from the clutch pedal and that the Heibel car proceeded in low gear in a curve to the east and northeast to the point where it came to rest northeast of the intersection. Another equally reasonable hypothesis is that the Heibel car may have completed more of its turn to the east on Howard avenue at the time of impact than Heibel testified to, and was still in motion at the time it was struck by the Voth car. In such case the momentum forward in an easterly direction of the Heibel car combined with the force exerted by the impact of the collision, as a result of being struck by the Voth automobile coming from the south, would easily account for the position of the Heibel car after the accident. The jury was not obliged to accept *in toto* the testimony of Heibel in answering the first question of the special verdict "Yes," but had the right to accept as true only part of such testimony, and likewise to accept as true part of Voth's testimony while rejecting other portions of the same.

We deem that we can fittingly conclude this opinion by quoting the following apt statement made by Mr. Chief Justice ROSENBERRY in *Stewart v. Meyer* (1933), 211 Wis. 347, 352, 353, 247 N. W. 316:

"It is not enough that the physical facts support one claim more strongly than the other. . . . *Many strange and unaccountable things happen in automobile collisions.* It is only in a *clear case* where the physical facts established in some way that *do not admit of dispute* are such as to overthrow

the evidence supporting the opposite claim that it can be said that it lacks sufficient credibility to support the verdict." (Emphasis supplied.)

*By the Court.*—Judgments affirmed.