BEHLING, Special Administratrix, Appellant, v. LOHMAN and others, Respondents.

*March 2—April 12, 1966.*

520

For the appellant there was a brief by *Eisenberg & Kletzke* of Milwaukee, and oral argument by *Sydney M. Eisenberg.*

For the respondents there was a brief by *Young & Ames,* attorneys, and *Frank T. Crivello* of counsel, all of Milwaukee, and oral argument by *Mr. Crivello.*

CURRIE, C. J.  Plaintiff first requests this court to change the answers of the jury with respect to the negligence issues so as to award judgment in favor of the plaintiff for the amount of damages found by the jury. Because of the conflict of testimony with respect to how the accident occurred this court cannot find that Behling was free of all causal negligence. This would be necessary in order for this court to reverse the judgment and enter one in plaintiff's favor awarding her the damages found by the jury.

The main thrust of plaintiff's other contentions are that she should be awarded a new trial on the following two grounds:

(1)  Defendant Lohman's causal negligence is as a matter of law greater than that of the deceased Behling's; and

(2)  The trial court committed prejudicial error in giving an additional instruction to the jury in the absence of plaintiff's counsel.

*Apportionment of negligence.*

In order to pass on the contention that defendant Lohman's causal negligence was greater than that of the deceased Behling's as a matter of law it is necessary to review the pertinent evidence.

At the place of the accident the paved portion of Highway 100 is 30 feet wide and painted lines divide the pavement into three 10-foot traffic lanes.  The weather was

clear and pavement dry. There is a considerable distance both north and south of the collision where the highway is comparatively straight and level. Just prior to the accident several vehicles were moving south in the west traffic lane both ahead and behind the deceased's dump truck. The tractor and semitrailer being operated by Lohman was proceeding north in the east traffic lane with apparently no vehicles directly ahead of it, but followed some 400–500 feet to the rear by a tractor-trailer operated by the witness Stewart. The speed of the two vehicles which collided was testified to by various witnesses as being from 30–45 miles per hour.

Stewart testified as follows: He saw the approaching Behling truck turn into the center lane in order to pass an automobile ahead of him and then proceed for an estimated 150 feet down the center lane. At the same time Lohman was driving his tractor-trailer unit north in the east traffic lane. When the two vehicles were about 12 feet apart the tractor-trailer driven by Lohman veered into the center lane a distance of four to six feet to the west of the line dividing such center lane from the east lane and struck the left side of the Behling truck, throwing it back and turning it over.

This testimony of Stewart was sharply contradicted by Lohman, his coemployee passenger, Block, and four disinterested witnesses. These witnesses were Buchan and Gipp, who were driving south in the west traffic lane behind Behling; Slusar, an employee of the nearby Clark Oil station adjoining the west side of the highway; and Towne, who was sitting in his car in a motel driveway at the east edge of the highway a little to the south of the point of collision. Lohman, Block, Buchan, Gipp, Slusar, and Towne all testified that just prior to the accident the Behling truck veered sharply to the east from the west traffic lane across the center lane and into the east traffic lane. All placed the point of impact in the east traffic lane. According to their testimony, it was the right and not the left side of the Behling truck which was

struck by the front of the tractor driven by Lohman. Lohman testified that immediately prior to impact he applied his brakes and turned his vehicle to the left. After the accident the Behling truck was upside down facing in a northwesterly direction in the center lane except for a very small portion of one corner which may have protruded into the west lane. Most of the tractor of the unit operated by Lohman was in the center lane. The rear wheels and all of the semitrailer were in the east traffic lane and the unit had jackknifed so that the tractor was facing approximately northwest while the trailer portion was facing mostly north. The box of the Behling truck was under the semitrailer. The photographs taken afterward show that the two vehicles came together with great violence.

If the positions of the vehicles after the accident are not conclusive as to the point of impact, there is ample credible evidence from which the jury could conclude that the Behling truck suddenly veered across the highway directly into the path of the tractor-trailer unit driven by Lohman and that the impact occurred in the east traffic lane. This would clearly support the apportionment of negligence made by the jury whereby 70 percent of the total aggregate causal negligence was attributed to Behling. There were no gouges on the pavement, skid marks, or debris tending to establish the point of impact. Probably because of the overturning of the Behling truck and the ensuing fire there was no testimony offered that its condition after the accident disclosed whether it was struck on the left or right side. Thus the crucial question is whether the position of the vehicles after the accident constituted such unquestionable physical evidence as to render incredible the testimony of eyewitnesses which placed the point of impact in the east traffic lane.[1]

[1] Cases which have enunciated the rule that unquestionable physical evidence may render incredible the testimony of witnesses to the contrary are: *Samulski v. Menasha Paper Co.* (1911), 147 Wis. 285, 133 N. W. 142; *Haggerty v. Rain* (1922), 177 Wis. 374,

The tractor portion of defendant's truck coming to rest in the center lane of the highway certainly does not conclusively refute the testimony that the accident occurred in the east lane. It should be remembered that the trailer portion came to rest in the east lane and on the east shoulder. Defendant Lohman testified that he turned to the left at the last minute and the thrust of his heavier vehicle could easily have carried the tractor portion of it into the center lane after the impact. This is indicated because defendant's vehicle struck the dump truck with such force that it flipped it completely over and it came to rest upside down facing the opposite direction from which it was traveling. Thus the position of the Behling truck after the accident is also not conclusive on the issue of where the impact occurred.

We deem apposite this statement made by Mr. Chief Justice ROSENBERRY in *Stewart v. Meyer:* [2]

"It is not enough that the physical facts support one claim more strongly than the other. . . .
"*Many strange and unaccountable things happen in automobile collisions.* It is only in a *clear case* where the physical facts established in some way that *do not admit of dispute* are such as to overthrow the evidence supporting the opposite claim that it can be said that it lacks sufficient credibility to support the verdict." (Emphasis supplied.)

Appellant plaintiff cannot prevail on her contention that the negligence of defendant Lohman as a matter of law was greater than that of plaintiff's decedent Behling.

186 N. W. 1017; *Stryk v. Sydarowich* (1929), 198 Wis. 542, 224 N. W. 479; *Burns v. Weyker* (1935), 218 Wis. 363, 261 N. W. 244; and *Strnad v. Co-operative Ins. Mut.* (1949), 256 Wis. 261, 40 N. W. (2d) 552.

[2] (1933), 211 Wis. 347, 352, 353, 247 N. W. 316. Other cases which have held physical facts not conclusive in automobile accident cases are: *Grana v. Summerford* (1962), 17 Wis. (2d) 396, 399, 117 N. W. (2d) 357; *Seefluth v. Herman Mut. Ins. Co.* (1961), 12 Wis. (2d) 319, 324, 107 N. W. (2d) 289; and *Heibel v. Voth* (1955), 271 Wis. 350, 356, 73 N. W. (2d) 421.

We are satisfied that this is not a case where this court should disturb the jury's apportionment of negligence.

*Instructing jury in absence of plaintiff's counsel.*

After the jury had been instructed they retired to deliberate upon their verdict at 2:35 p. m. on March 18, 1965. We quote from the record as to what thereafter transpired.

"The Court: I told counsel when the jury recessed this evening, late this afternoon that the counsel would be available in fifteen minutes when the jury requested further instructions or came in with a verdict.

"The jury buzzed at 10:30. We contacted Mr. Eisenberg. It is now quarter to eleven. He is not here. Accordingly, bring the jury down.

" (Whereupon at 10:45 o'clock P. M. of said day, Thursday, March 18, 1965, the jury returned to the courtroom, and the following proceedings were had, with Mr. Moore and Mr. Crivello [counsel for defendants] both being present, but Mr. Eisenberg not present. Mr. Eisenberg's client [the plaintiff] and friend was in the courtroom.)

"The Court: Are there any complaints about the supper? Was it all right?

"Jury: Very good.

"The Court: The other attorney is on the way down. I understand you have a question.

"Juror: It's very brief, and it will help us round out the whole thing. We wondered, what is the effect of the percentage in Question No. 5 on the amounts in Question 6.

"The Court: I will read you the instruction.

"Juror: Please.

"The Court: The Reporter will read the instruction which I gave on that. Look under the first instruction when I started on the damages.

"All I can do in answer to that question is repeat the instruction to you that was given to you. Read the one paragraph.

" (Reporter reading to jury:)

" 'Question No. 6 is the damage question, and you must answer the damage question no matter how you may have

answered any of the previous questions in the verdict. In answering the damage question, you will disregard any percentages you may find or state in answer to the comparative negligence question. Any use of application of such percentages will be for the Court to determine in directing judgment.'

"The Court: In other words, you answer the questions. Then the Court interprets the law. That is, you decide the facts, the Court decides the law.

"Juror: Thank you."

The jury again retired and at 10:55 p. m. returned to the courtroom with their completed verdict. Plaintiff's counsel was present at time of receipt of the verdict.

Plaintiff contends it was prejudicial error for the trial court to have repeated the instruction to the jury at the time of their return to the courtroom on the evening of March 18, 1965, because of the absence of plaintiff's counsel. In plaintiff's alternative motions after verdict plaintiff requested a new trial "because of errors in the trial" without specifying the nature of the errors complained of. This was wholly insufficient to alert the trial court to the issue now raised. Thus the plaintiff is precluded as a matter of right from raising this issue for the first time on appeal because of not having urged it as a basis for a new trial in the trial court.[3]

However, exercising our discretion to consider the issue on its merits we find no error. While the act of the trial judge, in agreeing to give counsel fifteen minutes' notice of any return of the jury to the courtroom is a common and desirable practice, it is not one he was under legal duty to extend.[4] There is no showing made on the record

---

[3] *Withers v. Tucker* (1965), 28 Wis. (2d) 82, 87, 135 N. W. (2d) 776; *Dombeck v. Chicago, M., St. P. & P. R. Co.* (1964), 24 Wis. (2d) 420, 430, 129 N. W. (2d) 185.

[4] *Walczakowski v. Milwaukee Electric Railway & Light Company* (1914), 157 Wis. 191, 194, 147 N. W. 20. See also *State v. Biller* (1952), 262 Wis. 472, 480, 481, 55 N. W. (2d) 414. *Ford Motor Credit Co. v. Amodt* (1966), 29 Wis. (2d) 441, 449, 139

that plaintiff's counsel was not given the fifteen minutes' notice agreed upon. Furthermore, the repeating of an entirely proper instruction could in no way have prejudiced plaintiff's rights.[5]

*By the Court.*—Judgment affirmed.

N. W. (2d) 6, holds that if counsel is not present when the jury returns its verdict he waives right to challenge its accuracy.

[5] Cf. *Meier v. Morgan* (1892), 82 Wis. 289, 295, 52 N. W. 174.