NIEMAN, by Guardian *ad litem,* and another, Appellants, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY and another, Respondents.*

*January 3—February 9, 1968.*

* Motion for rehearing denied, with costs, on April 9, 1968.

For the appellants there were briefs by *Warshafsky & Rotter,* attorneys, and *Ted Warshafsky* and *Michael I. Tarnoff* of counsel, all of Milwaukee, and oral argument by *Mr. Tarnoff.*

For the respondents there was a brief by *Giffin, Simarski, Goodrich & Brennan,* attorneys, and *E. J. Simarski* of counsel, all of Milwaukee, and oral argument by *E. J. Simarski.*

WILKIE, J. The three issues presented on this appeal are:

1. Is there credible evidence to support the jury's verdict that Wold was not negligent with respect to speed or lookout?

2. Was there prejudicial error in the trial court's instructions to the jury?

3. Should a new trial be ordered in the interest of justice under sec. 251.09, Stats.?

*Sufficiency of Evidence.*

The well-accepted rule governing our review in a case like this is that we must sustain the jury verdict if there is any credible evidence which, under any reasonable view or taking reasonable inferences drawn from that evidence, supports that verdict.[1] This is especially true when, as here, the jury's verdict has been approved by the trial court.[2]

Thus, our first inquiry is as to whether there is credible evidence to support the jury's finding of no negligence as to speed.

The jury heard the in-person testimony of the defendant giving his version of how the accident happened. Delaware avenue is about 46 feet wide in the area where the young plaintiff was hit. This permitted one traffic and one parking lane on either side of the street. Wold testified that he was driving his 1963 Buick in a northerly direction on Delaware avenue at a speed of 22 to 25 miles per hour. The applicable speed limit was 25 miles per hour. The weather conditions were clear and the street was dry. As Wold proceeded past Iron street he observed three or four parked cars near the middle of the block on Delaware facing north. The distance between the parked cars was approximately four to five feet. As Wold continued driving along Delaware, a distance of four to five feet separated the east side of his Buick from the west side of the parked automobiles. Wold further testified that he first observed the plaintiff when the boy ran into the street from between the first two parked cars. Wold claimed that the boy was only about five feet from his automobile when he emerged from

---

[1] *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 772, 151 N. W. 2d 706.

[2] *Schwalbach v. Antigo Electric & Gas, Inc.* (1965), 27 Wis. 2d 651, 135 N. W. 2d 263; *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. 2d 286, 128 N. W. 2d 400.

behind one of the parked cars; that he "jammed" on his brakes, but was unable to avoid striking the boy.

Thus, the defendant's explanation of the accident was simply that the boy appeared suddenly and that going under or even at the speed limit there was nothing Wold could do to avoid the accident.

Plaintiffs contend that Wold's testimony as to what happened is incredible. Their contention is based entirely on the physical facts surrounding the accident. They rely on a tape measure, the *Manual for Motorists* published by the motor vehicle department,[3] and an expert's opinion.

Police Officer Grund investigated the accident and observed and measured skid marks on the pavement which extended southerly 52 feet 4 inches from the rear of the right front tire on the Wold car. The wheel base of the Buick measured 10 feet 3 inches, leaving a measured skid mark to the rear tire of 42 feet 1 inch. Testimony and photographs taken right after the accident established that the Wold car was not moved after the collision and came to a stop opposite the second parked car on the east side of Delaware avenue with the front end of the Wold car about 12 feet north of the southerly end of that car.

The plaintiffs called Arpad Elo, a physics professor at Marquette University to testify as an expert witness. In answer to a hypothetical question incorporating the above-mentioned physical data, the expert testified that the lowest speed an automobile could have been going, under the circumstances, was 29 miles per hour. In arriving at this answer, Elo used the highest possible coefficient of friction which resulted in the lowest possible speed.

---

[3] Rev. ed. published in 1965 by the motor vehicle department and properly admitted in evidence. *See Keplin v. Hardware Mut. Casualty Co.* (1964), 24 Wis. 2d 319, 332, 129 N. W. 2d 321, 130 N. W. 2d 3.

Plaintiffs argue that this testimony, coupled with the measurements and table of average stopping distances of vehicles operated at various speeds set forth in the *Manual*, make Wold's testimony incredible and conclusively prove that Wold was negligent as to speed and lookout.

Of course, the rule is that, where human testimony is in direct conflict with established physical facts and common knowledge, it is incredible and will not support the verdict of the jury.[4] However, such rule applies only when the physical facts are irrefutably established and permit of but one inference.[5]

We think that all that is accomplished by the measurements, the *Manual*, and the testimony of the expert is to present a jury question as to Wold's negligence as to speed and lookout. No more. From the measurements and testimony we think the jury could have reasonably inferred that the actual accident occurred 12 to 17 feet before the car actually stopped. This follows from the fact that the boy came out from between the first and second car. There was about five feet between the cars

[4] *Strnad v. Co-operative Ins. Mut.* (1949), 256 Wis. 261, 40 N. W. 2d 552.

[5] *Milwaukee Automobile Mut. Ins. Co. v. Farmers Mut. Automobile Ins. Co.* (1957), 2 Wis. 2d 205, 85 N. W. 2d 799. Because of the complex and varied facts involved in each individual automobile accident case, an examination of somewhat similar cases is of limited aid in reaching a decision in any given case. Cases which have held that the physical evidence rendered the contrary testimony of witnesses incredible are: *Haggerty v. Rain* (1922), 177 Wis. 374, 186 N. W. 1017; *Stryk v. Sydarowich* (1929), 198 Wis. 542, 224 N. W. 479; *Burns v. Weyker* (1935), 218 Wis. 363, 261 N. W. 244; and *Strnad v. Co-operative Ins. Mut., supra,* footnote 4.

Cases holding that the physical facts were not conclusive in automobile accident cases are: *Grana v. Summerford* (1962), 17 Wis. 2d 396, 117 N. W. 2d 357; *Seefluth v. Herman Mut. Ins. Co.* (1961), 12 Wis. 2d 319, 107 N. W. 2d 289; *Heibel v. Voth* (1955), 271 Wis. 350, 73 N. W. 2d 421; and *Behling v. Lohman* (1966), 30 Wis. 2d 519, 141 N. W. 2d 203.

and the testimony just was not clear as to where, in this five-foot space, Thomas emerged. The testimony was also vague as to whether he started to cross the street at an oblique or right angle to defendant's car. But it was agreed that the car came to a halt about 12 feet north of the rear end of the second car. Hence the jury could infer that Thomas was hit 12 to 17 feet south of that spot. This would mean that only 25 to 30 feet of the 42-foot-1-inch skid mark was laid down before the actual impact.

Turning to the *Manual* it is noted that the actual stopping distance of 42 feet 1 inch, not including reaction time, would fall somewhere between the 25 feet needed to stop at 20 miles per hour and the 55 feet required to stop at 30 miles per hour. Interpolating the skid mark here would indicate a speed of approximately 25 or 26 miles per hour. It must be noted that the *Manual* deals with average stopping distances at various speeds under normal driving conditions on dry, level pavement.[6] The *Manual* is a guide but its tables are not absolute verities. Allowing for a reasonable variation from these averages we think that a jury question was clearly raised as to Wold's negligence as to speed.

Turning to Wold's lookout, it is obvious that Wold was incorrect when he stated that Thomas was only five feet away from the car when Wold first saw him. Thomas may have seemed that close. But it appears that Wold braked his car 25 to 30 feet before hitting Thomas. Why did Wold brake the car if he had not seen Thomas? Assuming the vehicle traveled 25 feet during the reaction period, Wold must have seen Thomas when the boy was nearly 50 feet away. Again referring to the *Manual* as a general guide, a distance of over 70 feet would be required to stop if Wold were traveling within the speed limit (as the jury could infer). Thus, the collision would

[6] *Mainz v. Lund* (1963), 18 Wis. 2d 633, 641, 642, 119 N. W. 2d 334.

have occurred even if Wold had seen Thomas at the distance of 50 feet.

We think that the trial court ably summarized the jury's findings as to no negligence on the part of Wold, stating:

"In effect, the jury found that the plaintiff child, 6 years and 4 months old at the time of the collision on February 8, 1964, had darted out from between two automobiles parked on the east side of South Delaware Avenue, north of East Iron Street, into the path of defendant Wold's vehicle going north; that defendant Wold was not able to see the child until it came out from between those cars, and when he first saw it, the child running west was on a line about five feet north of the right front corner of his automobile; that he was driving with the right side of his car about five feet west of the parked cars; that he was going about 22 miles an hour, which was under the allowable maximum speed of 25 miles per hour, and that such speed was not a negligent speed under the circumstances disclosed by the evidence. Defendant driver was found not negligent as to lookout, and was found not to have been driving at an unlawful or negligent rate of speed. Because of the shortness of the distance, he could do no more than apply his brakes. The collision could not have been avoided, whether or not he was going 22 miles an hour or 29 miles an hour or any speed in between."

### Instructions.

Plaintiffs contend that prejudicial error was committed by the trial court in refusing their requested instruction as to speed (based on Wisconsin Jury Instruction No. 1290) and in giving the following instruction:

"As to subdivision (b), which inquires as to speed, at the time and place in question, the allowable maximum speed limit prescribed by law on South Delaware Avenue was 25 miles per hour, there being no evidence of any other posted speed limit. It was also the law of this state at that time that no person shall operate a vehicle at a speed greater than is reasonable and prudent under con-

ditions, having regard for actual and potential hazards then existing; and the speed of the vehicle is to be so controlled as may be necessary to avoid colliding with any person on the highway, in compliance with legal requirements."

We think that since a fixed speed limit was involved the standard instruction appropriately adapted to the circumstances of the case was preferable.

However, the failure to give such instruction in this case was not error. The instruction given was substantially like the one requested and clearly put across to the jury the point that at the place of this accident no one was allowed to operate a car at any speed in excess of 25 miles per hour.

### New Trial in the Interest of Justice.

Plaintiffs contend that even should this court deny their request for a new trial based on their contentions of error, we should order a new trial as to liability in the interest of justice under sec. 251.09, Stats.

Counsel refers to the case of *Mainz v. Lund* [7] where this court did order a new trial in the interest of justice. In *Mainz* a four-and-one-half-year-old plaintiff was struck by defendant's automobile on a city street in La Crosse during the late afternoon hours when it was growing dark. At the time of the accident the pavement was dry and the weather clear. The defendant testified that he was driving between 20 and 25 miles per hour (the speed limit was 25 miles per hour) when the minor plaintiff left a safety island in the middle of the street and darted in front of defendant's car. Skid marks measuring 56 feet 2 inches were found extending from the rear bumper of the car. As in the instant case, the jury found that the defendant driver was not negligent.

---

[7] *Supra,* footnote 6.

On appeal this court held that the great weight of the evidence indicated that the defendant was negligent as to speed. From this factor, together with the fact that the jury awarded inadequate damages, this court concluded that justice had miscarried and, pursuant to sec. 251.09, Stats., ordered a new trial in the interest of justice.

In the instant case, the court is satisfied that, although the case is close, jury questions were presented and justice has not miscarried. It is also noted that no complaint is made as to the amount of damages awarded by the jury. *Mainz* is therefore distinguishable and the court concludes that there is no basis for granting a new trial under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.