STEWART, Plaintiff and Respondent, vs. MEYER, Appellant: CLEMENT, Interpleaded Defendant and Respondent.

SCHLEGEL, Plaintiff and Respondent, vs. MEYER, Appellant: CLEMENT, Interpleaded Defendant and Respondent.

SCHLADER (EMMA), Plaintiff and Respondent, vs. MEYER, Appellant: CLEMENT, Interpleaded Defendant and Respondent.

SCHLADER (ROSE), Plaintiff and Respondent, vs. MEYER, Appellant: CLEMENT, Interpleaded Defendant and Respondent.

CLEMENT, Plaintiff and Respondent, vs. MEYER, Defendant and Appellant.

*February 7—May 9, 1933.*

348

For the appellant there was a brief by *North, Parker, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie* and *E. M. Duquaine.*

*Allan V. Classon* of Oconto, for the respondents.

For the interpleaded defendant and respondent there was a brief by *Chadek & Cornelisen* of Green Bay, attorneys, and *Lines, Spooner & Quarles* and *Howard A. Hartman* of

counsel, all of Milwaukee, and oral argument by *Mr. Hartman* and *Mr. Frank P. Cornelisen.*

The following opinion was filed March 7, 1933:

ROSENBERRY, C. J. The contentions of the respective parties to these cases present a rather unusual situation. The plaintiffs contend that Matt Clement, the driver of the Whippet coach, was proceeding on his right-hand side of the road east of the black center line, in a careful manner, driving his car at a speed not greater than fifteen miles per hour and near the shoulder on the east side; that his car was under perfect control and that it did not skid nor slide; that the defendant's truck, driven by Marsh, was straddling the center line and partially on the east side, its left side of the traveled portion of the highway, and that it struck the Whippet coach on the left-hand side of the Whippet coach, driving it back thirty or forty feet into the position in which it came to rest. There is no dispute as to what occurred after the impact. The sole controversy relates to the relative positions of the truck and the coach immediately prior to the impact.

It is the contention of the defendant Meyer that the truck was traveling at an ordinary rate of speed and on the west side, its right side of the highway; that when the Whippet coach was about thirty feet from the truck, the coach suddenly skidded to its left side or the west side of the highway in front of the oncoming truck and had started back towards its right side and was crossways in the road directly across the path of the truck when the front end of the truck hit it squarely in the side; that after the impact the cars came to rest as heretofore described.

There is no doubt, considering solely the evidence received upon the trial from the mouths of witnesses, that a verdict of the jury which found for either of the parties would be sustained by such evidence. Having regard to such evidence

alone, whatever the conclusion of this court might be as to which of the claims was supported by the preponderance of the evidence, the court would still be obliged to say there was sufficient credible evidence to sustain a finding the other way.

What we are asked to do in this case is to say that the evidence presents two wholly inconsistent theories or explanations of the manner in which the damage to the Whippet coach was sustained, that one contention cannot be partly true and the other contention partly true, that one is exclusive of the other; that an examination of the injuries sustained by the truck and the coach and their relative positions after the vehicles came to rest, after the collision, is so inconsistent with plaintiffs' explanation of the accident as to render the statements made by the witnesses wholly incredible. Photographs of the Whippet and the truck taken shortly after the accident are reproduced herewith.

The witness Anne Stewart testified:

"I didn't see the truck strike but I seen it when it was just ready to strike. It was way over on our side of the road. . . . Our car was not swaying at that time. It was going perfectly straight along the road on my right-hand side on the ice. This truck struck our car on the left-hand side. The head end of the truck did not strike the head end. of our car." . . .

This is the only evidence on the part of the plaintiffs which gives any clue to the exact position of the truck immediately prior to the impact. The driver testified that he did not know because he was watching the right side of the road. Rose Schlader testified:

"I didn't see the truck before the accident until it was almost ready to crash. As it came towards us it seemed to be part on our side of the road. I really couldn't say how far but it was a short distance."

Mary Schlegel testified that she did not see the truck just before the collision. Emma Schlader testified:

"I am positive our car did not sway on that big patch of ice at any time. The ice was slightly melted, the day wasn't cold enough to keep it frozen. When I saw the Soap Company truck coming it was so close in front of me that I knew it was going to crash. . . . I don't know what position in the road the truck was occupying; all I could see was a black object that was going to hit us. I knew it was going to hit us because it was so close and coming so fast that I knew he couldn't do anything to prevent crashing into us. He (truck driver) was about in the middle of the road. I didn't see the truck sufficiently long to describe what it looked like, only as a big black object."

If the collision had occurred in the manner testified to by witnesses for the plaintiffs, then the blow, it is claimed by the defendant, would have been a glancing blow which would have struck the Whippet on its left side and the injuries sustained by the truck would have been on the left side of the truck, whereas the physical appearance of the truck after the accident indicated that it came into collision with the left side of the Whippet head on or nearly so.

(2) The defendant further claims that had the accident occurred as testified to by the plaintiffs, the running board of the Whippet would have been crushed and torn from its position, whereas the photograph shows it to have been in position and uninjured, proving that whatever struck the Whippet passed above the running board without touching it and that this could only have occurred if the truck hit the Whippet broadside.

However persuasive the physical condition of the truck and the Whippet after the accident may be, the situation is not such that the court can say that the evidence which supports the verdict is incredible. It is not enough that the physical facts support one claim more strongly than the

other. The physical facts must be such as to render the evidence which supports the opposite claim incredible. It appears that the broken glass was found in the center of the traveled track. It may well be that the Whippet did skid but was struck by the truck while the truck was on the east or its left side of the highway. The truck could not have hit the Whippet squarely abeam or the Whippet would have been crushed. The position of the Whippet after the cars came to rest indicates that the blow was at some acute angle and not at right angles to the Whippet's line of travel. Conceding that the conditions of the Whippet and the truck are more consistent with defendant's than plaintiffs' claims, it is not so inconsistent as to overthrow it completely.

In this respect this case differs from that of *Holborn v. Coombs,* 209 Wis. 556, 245 N. W. 673. There the car in which the plaintiff was riding came clear over on its left or wrong side of the highway and the circumstances were such as rendered the evidence tending to support plaintiff's claim incredible. Many strange and unaccountable things happen in automobile collisions. It is only in a clear case where the physical facts established in some way that do not admit of dispute are such as to overthrow the evidence supporting the opposite claim that it can be said that it lacks sufficient credibility to support the verdict.

*By the Court.*——Judgments affirmed.

A motion for a rehearing was denied, with $25 costs in one case only, on May 9, 1933.