KRAUTH, Respondent, v. QUINN and others, Appellants.

*No. 335. Submitted under sec. (Rule) 251.54 April 10, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 839.)

For the appellants the cause was submitted on the briefs of *Arnold P. Anderson* and *Carroll, Parroni, Post-lewaite & Anderson, S. C.,* all of Eau Claire.

For the respondent the cause was submitted on the brief of *Gavic, Richardson & Skow* of Spring Valley.

DAY, J. The principal question raised on this appeal is, did the trial court err in changing a special verdict apportionment of negligence from 80 percent to the plaintiff and 20 percent to the defendant, to 40 percent and 60 percent, respectively? We conclude that the trial court has no such authority under our law and, therefore, it was error for the court in this case to do so; other questions raised on this appeal will be stated in the opinion.

This is a negligence action arising out of an automobile accident. The jury returned a special verdict finding the defendant-appellant William M. Quinn ("defendant") 20 percent negligent and the plaintiff-respondent Paul Krauth ("plaintiff") 80 percent negligent. The trial court then changed certain answers in the special verdict and entered judgment finding Mr. Quinn 60 percent

negligent and Mr. Krauth 40 percent negligent, because it was the trial court's determination that the testimony upon which the jury verdict was based was incredible, and that such testimony was contrary to certain controlling physical facts depicted in photographs and measurements of the accident scene. Defendant appeals from this judgment based on the special verdict answer as so changed by the court.

The question, therefore, resolves itself into whether or not there was credible evidence to support the jury finding that the plaintiff was 80 percent causally negligent in the accident and the defendant 20 percent.

The accident occurred May 21, 1970, at about 4:30 p.m. on Paradise Valley Road, a town road in Dunn county. The road is a blacktop road approximately 20-feet wide which runs in a generally north-south direction. At the place where the accident occurred there is a curve in the road described as a fairly sharp bend. Going south on the road, this is a bend to the right or west and then, after going to the west for a short distance, the road bends back and proceeds south again. At the curve there is a steep hill. Proceeding north on Paradise Valley Road, as one negotiates the curve, one is descending this hill so that after completion of the curve one is again on level ground. Just north of the curve, at the point where the accident occurred, there is only approximately a foot of shoulder on the east side of the road and then the ground drops off steeply 10 to 12 feet down to railroad tracks and past the tracks to a river.

At about 4:30 p.m. on May 21, 1970, the defendant Quinn was driving a tandem cement truck owned by the defendant Eau Claire Sand and Gravel Company north on Paradise Valley Road. He had been hauling redi-mix cement since 7 or 7:30 that morning and was returning from his last run of the day. He had been a cement-truck driver for two or three years for that

company and had a total of sixteen years' truck-driving experience. The truck was of the cylinder-drum type, had 10 wheels, and was less than eight-feet wide. It was empty at the time of the collision. Mr. Quinn testified that as he had come out of the curve and down the hill, heading north in the right lane, he was going 30 to 35 miles per hour; at that time he saw a red 1964 Chevrolet convertible operated by the plaintiff. Defendant testified that when he first saw him, the plaintiff was 100 to 150 feet from him, proceeding south toward the defendant and was in the middle of the road going at a high rate of speed. He states that his own vehicle was well over to the right with his right wheels on the shoulder or very near the edge of the blacktop; that when he saw the plaintiff coming toward him he began "fanning" his brakes, tapping them occasionally, and said that almost as soon as he saw the plaintiff, the plaintiff slammed on his own brakes and that defendant could hear the brakes squeal. In a deposition prior to trial Mr. Quinn had said that the plaintiff slammed on his brakes and then began to come across the road toward him. Confronted with this apparent conflict at the trial, defendant testified that plaintiff may not have been exactly in the middle of the road at the outset but was close to the middle, and when plaintiff hit his brakes he came across the road more toward the defendant's vehicle. Mr. Quinn insisted that the plaintiff Krauth was partially in Quinn's lane of travel from the beginning and then invaded that lane further. This road did not have a visible center line. The defendant testified that at some point he did apply his brakes fully and that they began to skid, but that he skidded in a straight line, did not swerve, and he remained to the right of the imaginary center line at all times.

The two vehicles collided. The plaintiff's car grazed the front fender of the defendant's truck, scraped along the side of the truck, struck the tandem wheels in the

rear and continued skidding down the road for about 30 feet. A county traffic officer with eighteen years' experience in investigating automobile accidents arrived at the scene of the collision shortly after it occurred; he said the road was dry when he arrived, but it soon began to rain very hard. His testimony was that the vehicles had not been moved between the time the collision occurred and when he arrived; he took photographs which are entered as Exhibits 1 through 5 in the record. These photographs were relied on by the trial court as establishing that the plaintiff's vehicle was not in the defendant's lane of travel at the point of impact.

The photos purport to show a gouge mark in the blacktop which the officer said was freshly made and was made by some part of the plaintiff's automobile. From the west edge of the blacktop, which would have been to the plaintiff's right as he was proceeding south, to the center of the gouge mark was measured by the officer to be eight feet six inches. The gouge mark was said to be 10 inches in circumference. The officer apparently considered the gouge mark to be located at the point of impact. He measured the skid marks from that point and found plaintiff's left skid mark to extend 70 feet from the gouge to the north, while the right skid mark was 84 feet from the gouge to the north. Because the car was going in a southerly direction, these measurements indicate the length of the skid from its beginning to the alleged point of impact. The officer testified that the skid marks continued past the gouge mark for another 30 feet, or a total of about 114 feet of skid marks; the plaintiff's car ended up on the defendant's side of the road.

Skid marks, which the officer believed to have been made by the rear set of dual tires on the defendant's truck, were about one foot three inches to the east or

left of the left skid marks made by the plaintiff's car and seven feet to the north of the gouge mark. He also testified that the defendant's truck left no skid marks to the south of the gouge mark; that is, if the gouge mark were taken as the point of impact, the truck began to skid only after its impact with the plaintiff's automobile. The defendant testified that he saw skid marks of his vehicle which were made before the point of impact.

The officer testified that when he arrived at the scene of the accident he asked the defendant if he was on the wrong side of the road and the defendant said he did not know; the defendant denies that he made this statement to the officer. Mr. Quinn insists that at all times he was on his side of the imaginary center line of the road. The defendant said his vehicle, as shown by the photographs, came to rest in his own proper lane of travel; the officer, on the other hand, said he could not recall if the defendant's truck was resting in the defendant's own lane of travel after it came to a stop following the collision. It is undisputed, however, that the plaintiff's vehicle did come to rest in what was the defendant's lane of travel. The defendant also testified that certain debris was knocked off the plaintiff's vehicle into the defendant's lane but that people picked it up and moved it off the road before the officer arrived.

A man who lived some 200 yards north of the curve on Paradise Valley Road was standing in his driveway when the plaintiff passed in his red convertible automobile; he said his attention was attracted to the vehicle by its speed, that he saw it for only a few seconds—"Just zip and it was past"—but its engine sounded "laboring;" he did not observe the collision.

The plaintiff was knocked unconscious by the collision and can remember nothing about it. His last recollection was first entering onto Paradise Valley Road, but he said it was a nice day, he was in no hurry and was, therefore, relatively certain he was not exceeding the speed limit.

After the trial, which lasted for two days, the plaintiff moved for a directed verdict finding the defendant 100 percent negligent and the plaintiff not negligent. The trial court reserved ruling on the motion and the plaintiff then moved that the court answer special verdict questions number one and two "Yes," thereby finding the defendant causally negligent. The trial court again reserved ruling on that motion. The defendant moved the court to answer special verdict questions number three and four "Yes," thereby finding plaintiff causally negligent. The court again reserved its ruling on that request.

The jury returned a verdict finding the plaintiff Krauth 80 percent causally negligent and the defendant Quinn 20 percent causally negligent. Plaintiff moved after verdict for a directed verdict or for a new trial; the defendant moved for a judgment on the verdict; neither motion was granted. Instead the trial court changed the jury's special verdict answers to find that the plaintiff was only 40 percent causally negligent and the defendant 60 percent causally negligent. Judgment was entered June 26, 1973, on the verdict as so changed; defendants Quinn, Eau Claire Sand and Gravel Company and its insurer, The Travelers Insurance Company, appeal therefrom.

This court has decided the authority of the trial court to change special verdict questions and apportion exact percentages of negligence between the parties. Most recently, in *Britton v. Hoyt* (1974), 63 Wis. 2d 688, 693, 218 N. W. 2d 274, the trial court had changed a finding of a plaintiff being 50 percent causally negligent to 30 percent and finding a defendant 70 percent rather than 50 percent negligent. In reversing and holding that the trial court has no power to reallocate specific percentages of negligence, this court said, pages 693, 694:

"However, the majority of the court believes that while a trial judge can find as a matter of law the apportionment of causal negligence is against the great weight and clear preponderance of the evidence or that the causal negligence of one actor is greater than that of another, the trial court cannot conclude that exact percentages can be so determined."

While the trial court, thus, has no authority to re-apportion exact percentages of negligence, the issue remains whether the jury's answers should have been left entirely intact. Therefore, the question before us is, was there credible evidence to support the jury finding that the plaintiff was 80 percent causally negligent and the defendant 20 percent causally negligent?

The scope of our review of the trial court's decision to change a jury's special verdict answers was reiterated in *Britton,* page 693:

"The traditional rules governing the changing of answers in the jury verdict are well-known. The jury verdict must be sustained if there is any credible evidence which under any reasonable view of the evidence considered in a light most favorable to the verdict meets the burden of proof applicable to that type of case and thus supports the verdict. It is a question of minimum sufficiency. *Bohlman v. American Family Mut. Ins. Co.* (1974), 61 Wis. 2d 718, 214 N. W. 2d 52; *Rodenbeck v. American Mut. Liability Ins. Co.* (1971), 52 Wis. 2d 682, 190 N. W. 2d 917; *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 151 N. W. 2d 706; *Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N. W. 2d 697, 74 A. L. R. 2d 1095."

*Britton* sets out those alternatives, not including the one eliminated above, open to the trial court when the jury's apportionment of negligence is not supported by the evidence. This court said:

"In those relatively few cases where the appellate court or the trial court found the evidence did not support the apportionment made by the jury and the court

could find as a matter of law that the negligence of the plaintiff equalled or exceeded that of the defendant, the court so found and denied recovery to the plaintiff. When the court considered the negligence of the plaintiff was relatively less than the defendant and he ought to recover something but the jury's apportionment would not allow it, he was granted a new trial in the interest of justice. It was sometimes said this would be done even if the apportionment of negligence was not wrong but was against the great weight and clear preponderance of the evidence. This procedure, of course, on the part of the trial court has a statutory basis in sec. 270.49, Stats., which provides for a new trial in the event the verdict is against the great weight and clear preponderance of the evidence."

The evidence upon which the defendants assert the jury was justified in finding plaintiff 80 percent causally negligent consists almost entirely of defendant Quinn's own testimony as set forth earlier in this opinion. Based on the defendant's testimony there was sufficient evidence for a jury to find the plaintiff 80 percent causally negligent. However, the test is not merely that there be evidence; the evidence must be credible. In *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 115, 31 N. W. 2d 156, this court said:

". . . testimony is incredible when it is so in conflict with the uniform course of nature or with fully established physical facts that no reasonably intelligent man could give it credence . . . ."

This court has also said:

". . . the probative value of testimony is not destroyed by physical facts unless the physical facts are irrefutably established and permit of only one deduction." *Nothem v. Berenschot* (1958), 3 Wis. 2d 585, 589, 89 N. W. 2d 289.

The principal evidence relied on by the plaintiff is that the middle of the gouge mark in the road was eight feet

six inches from the edge of the pavement, that the plaintiff's left skid mark went over the gouge mark, that the road was 20-feet wide at the place where the gouge mark was made and that therefore the plaintiff's lane was about 10-feet wide and an allegation that the plaintiff's skid marks were all in his right lane of travel. The problem is that there are no measurements showing that all of the plaintiff's skid marks prior to the point of impact were in his own lane; rather, it is established that at the gouge mark, which the left skid ran over, the skid marks were in his proper lane. The officer at the scene was asked if the left skid mark was at any time farther east (to the left) than it was at the gouge mark. His answer was, "As I recall, it went in a straight line." There is nothing in the record establishing as a physical fact that the gouge mark is at the point of impact of the two vehicles. The fact the officer used it as his reference for measuring the skid marks indicates he believed it was. There was no testimony as to what portion of the plaintiff's car may have caused the gouge in the road. The exact point of impact was not established. The five pictures submitted as exhibits do not tell us where the gouge mark is. There appear to be two places on the photograph which might be the gouge mark. It has not been marked or identified on the photographs. There is no point other than where the gouge mark was that the road was measured to determine its width. Asked if the width would depend upon where he took the measurement, the officer testified, "I would have to say I don't know." Though the plaintiff argues that the photos show the defendant's truck resting in the plaintiff's lane, the officer said he could not recall whether it was and the defendant insists that the picture show his truck to be resting in his own lane. Therefore, the physical facts alone, without the opinion testimony of the officer, establish only one conclusion and that is that at the

point where the gouge mark was found, plaintiff's skid marks are in his own lane of travel. The measurements do not establish that the plaintiff was in his own lane at the point of impact because that point is unknown. Nor do they establish that the plaintiff's marks were always in his lane, because both the width of the road and the location of his skid marks are unknown for any point except where the gouge mark was. Further, the pictures allow more than one inference. The right skid mark of the plaintiff's car, as shown in Exhibits one, two, and three, appears to be some distance from the right shoulder of the road although no measurement was taken and what that distance was remains unknown. In Exhibit one, the defendant's truck does appear to be in the plaintiff's lane, but the plaintiff's right skid mark seems quite far from the right or west edge of the road and his left skid mark seems to be in the defendant's lane. In Exhibit four, the truck seems to be in its own lane.

The following language of this court is pertinent:

" 'It is not enough that the physical facts support one claim more strongly than the other. . . .

" '*Many strange and unaccountable things happen in automobile collisions.* It is only in a *clear case* where the physical facts established in some way that *do not admit of dispute* are such as to overthrow the evidence supporting the opposite claim that it can be said that it lacks sufficient credibility to support the verdict.' (Emphasis supplied.)" *Behling v. Lohman* (1966), 30 Wis. 2d 519, 524, 141 N. W. 2d 203, quoting from *Stewart v. Meyer* (1933), 211 Wis. 347, 352, 353, 247 N. W. 316.

We conclude that the physical facts in this case are too few to render the defendant's contrary testimony incredible; that the inferences the photographs are claimed to raise for the plaintiff are not irrefutable; and that these photographs are susceptible of more than one inference or deduction. The defendant's testimony

and the testimony of the man who lived near the scene of the accident constitute sufficient credible evidence to support the jury verdict. It was not shown by plaintiff to be contrary to irrefutably established physical facts which permit of only one deduction. We conclude, therefore, that the jury verdict should be reinstated.

The plaintiff-respondent suggests a new trial in the interest of justice, but it cannot be said that a new trial would probably produce a different result. We must assume that the officer presented in this trial all the measurements and photographs that he has. The facts depicted therein are simply inconclusive. He said he probably would have taken more measurements had it not rained so hard very soon after he arrived at the scene, but the fact is he did not take any more measurements. Because it seems there would be no more physical evidence at the second trial than at the first, we cannot say that it is probable that the defendant's testimony and that of the man who lived near the scene would be disregarded and that a different result would be reached.

*By the Court.*—Judgment reversed, and cause remanded with direction to enter judgment pursuant to the opinion.