DeGroff, Plaintiff, v. Schmude, and others, Defendants-Respondents: Schultz and another, Defendants-Appellants.

*No. 532 (1974). Submitted on briefs February 4, 1976.—Decided March 2, 1976.*

(Also reported in 238 N. W. 2d 730.)

For the appellants the cause was submitted on the brief of *Juneau, Johnston & Gabler, S. C.,* lawyers, of Marshfield.

For defendants-respondents, Orville A. Schmude and Travelers Indemnity Company, the cause was submitted on the brief of *R. H. Younglove* and *Fulton, Menn & Nehs, Ltd.* of Appleton.

For defendants-respondents, Thomas A. Stobbe and Travelers Indemnity Company, the cause was submitted on the brief of *Crowns, Merklein, Midthun & Metcalf* of Wisconsin Rapids.

For plaintiff-respondent, Orville A. Schmude, the cause was submitted on the brief of *R. H. Younglove* and *Fulton, Menn & Nehs, Ltd.* of Appleton.

For third-party defendants-respondents the cause was submitted on the brief of *Crowns, Merklein, Midthun & Metcalf* of Wisconsin Rapids.

BEILFUSS, J. The issues are whether it was error to order a new trial in the interest of justice and whether it was error to award costs to one party prior to the new trial.

From the testimony adduced at the trial it appears that this accident occurred about one-quarter mile south of the unincorporated village of Spring Lake on County Trunk Highway F between the cities of Wautoma to the northwest and Berlin to the southeast. A motorist traveling south on "F" was required to stop at a stop sign in Spring Lake. Beyond the stop sign the highway ascends a slight hill and crosses a set of railroad tracks. At the top of the hill the highway curves to the west. A barn which is located at the crest of the hill obscures a southbound motorist's view of the curve to some extent. Near the point of the collision the roadway was about 19½ feet wide with narrow shoulders and a sharply sloping ditch on the west side. All witnesses agreed that on the evening of the accident that area of the highway was snow-packed and slippery. Some witnesses testified that it had snowed earlier in the evening and Orville Schmude testified that there was a light fog or haze.

Schmude stated that he attended a New Year's party at a country club near Berlin on the evening of the accident. At about 12:15 a.m., he received a telephone call from his younger son informing him that an older son was stuck in a ditch near Spring Lake and wanted some help getting out. Schmude immediately left for Spring Lake on County F in his 1969 Jeep station wagon. The vehicle was equipped with a four-wheel drive and an electric winch located on the front bumper. Schmude approached Spring Lake from the south and found his son's car in the ditch on the left or west side of the highway. He turned his vehicle around and lined it up at an angle on the highway with his son's car. Schmude attached the cable and attempted to winch the car out of the ditch. However, the Jeep would not hold on the slippery highway. Schmude put the vehicle in four-wheel reverse and operated the winch at the same time but the Jeep rotated to the west shoulder of the roadway facing south and the

motor stalled. Schmude testified that the right side of his vehicle was against a small snowbank on the shoulder of the highway and that a foot to a foot-and-a-half of the vehicle remained on the roadway. No witness placed more than half of the Jeep on the road.

The Jeep would not start because the battery was too low. Schmude turned off all the lights and intended to wait with his son until the battery regenerated enough strength to restart the vehicle. However, as the two were standing near the vehicle, another automobile came by on the highway from the north "rather close" to the Jeep so Schmude turned the parking and taillights back on. The vehicle was also equipped with emergency flashers but Schmude did not turn them on. Schmude stated he checked the lights to see that they were working and that they appeared to be of normal brightness.

Shortly after the lights on the Jeep were turned back on, Thomas Stobbe and his passenger, James DeGroff, approached from the north in his automobile and stopped. Stobbe stated he first saw the taillights on Schmude's Jeep as he crossed the railroad tracks south of Spring Lake. DeGroff did not recall seeing any taillights but did see the Jeep itself as Stobbe passed the barn at the crest of the hill. The speed limit in the area was 25 miles per hour and Stobbe was going about 30 miles per hour but had no difficulty stopping. Stobbe recalled that the Jeep was as far off the roadway as it could get without crossing the snowbank and that he had no trouble getting by on the left.

As Stobbe stopped alongside the Jeep, Schmude recognized DeGroff and, after some discussion, the parties decided to attempt to start the Jeep with the use of battery jumper cables attached to Stobbe's auto. Stobbe continued south on "F," turned around in the first driveway, and returned to park directly in front of the Jeep with the front of his vehicle headed north. Both Schmude

and Stobbe stated the two vehicles were directly in line with the front ends about half-a-foot apart. The headlights, four-way emergency flashers and two amber "fog lamps" on the Stobbe vehicle were turned on. The hoods on both vehicles were raised as Schmude, DeGroff and Stobbe attempted to attach the jumper cables. Schmude and DeGroff were standing between the vehicles. One end of the cable which Stobbe was attempting to connect to his automobile dropped to the ground and as he stooped to pick it up he saw the lights of another vehicle headed toward the rear of the Jeep. He yelled for the others to watch out and jumped back just before the impact. Both Stobbe and DeGroff testified to hearing a sound of brakes being applied or of tires squealing just before the collision. Schmude neither saw nor heard anything. Stobbe also stated that a second impact occurred about thirty seconds after the initial collision.

Barry Schultz, the driver of the vehicle which struck Schmude's Jeep, left his home at about 6:30 p.m., on New Year's eve and attended a card party at a friend's house until about 8:30 or 8:45. While there Schultz consumed four mixed drinks. After leaving his friend's house, Schultz went to the home of his girl friend, Dianna Walejko (now Dianna Grim), who lived on a farm about 600 yards south of the accident site. Schultz had a glass of champagne at the Walejko residence before he and Dianna left at about 9:30 to attend the New Year's dance at Camp Waushara. While at the dance Schultz consumed four to five small bottles of beer. The couple left the dance to return to the Walejko home at about 1:00 a.m.

Schultz was familiar with the Spring Lake area and knew that the speed limit was 25 miles per hour. He was also aware that the barn limited visibility south on "F" from Spring Lake. Schultz proceeded from the stop sign in Spring Lake at about 30 miles per hour and first saw

a headlight approximately eight carlengths away as he passed by the barn. He then saw the taillights on the Jeep but made no immediate attempt to stop because he thought two vehicles were passing on the roadway ahead. Dianna Walejko Grim stated at the trial that she first saw the glow of lights over the hill as Schultz proceeded up the hill and that the barn obscured her vision of the curve until almost the crest of the hill. In a statement taken shortly after the accident, Mrs. Grim had stated that she saw taillights on the Jeep about 20 yards from the point of impact. However, in her testimony at trial, she did not recall seeing any taillights.

When the Jeep was about one carlength away, Schultz realized that its taillights were right in line with his car. He slammed on his brakes, started to slide, and attempted to turn to the left but struck the Jeep almost center-rear. Schultz stated that he reacted instinctively and later realized that he should have pumped his brakes on the slick surface. He did not recall how many times he hit the Jeep but conceded it could have been more than once. In the prior statement Mrs. Grim stated that there were two impacts.

Schultz stated that a restriction on his driver's license required him to wear eyeglasses while driving and he admitted that he was not wearing them at the time of the accident. Schultz was nearsighted. He explained that the restriction appeared on his license after he had responded affirmatively to a question on a prior renewal application which inquired whether he wore glasses. However, Schultz testified that no doctor had ever told him he needed glasses to drive and he seldom wore them while driving before the accident. Mrs. Grim had never seen Schultz wear glasses while driving. She also stated that Schultz appeared to be driving normally and Schultz testified he did not feel that the liquor he had consumed had any effect on his driving.

At the conclusion of testimony, and upon motions by counsel, the trial judge determined that special verdict questions inquiring as to the negligence of Barry Schultz and Thomas Stobbe should be answered "Yes" as a matter of law. The judge concluded that both had violated safety statutes—Schultz in exceeding the speed limit and failing to wear his glasses, and Stobbe in parking on the wrong side of the roadway. However, a motion to answer the question inquiring of Orville Schmude's negligence "Yes" as a matter of law on the ground that he had provided inadequate lighting on his vehicle was denied.

The jury apportioned the causal negligence 10 percent to Stobbe and 45 percent each to Schultz and Schmude. The parties submitted the usual motions after verdict. All were denied except Schmude's motion for a new trial in the interest of justice and that part of Stobbe's motion requesting costs.

The appellants Schultz and his insurance carrier and Stobbe and his insurance carrier contend that the trial court erred in granting a new trial in the interest of justice. Primary reliance is placed upon the rule that the apportionment of negligence is peculiarly within the province of the jury and should not be disturbed if supported by credible evidence. They rely upon *Bohlman v. American Family Mut. Ins. Co.* (1974), 61 Wis. 2d 718, 214 N. W. 2d 52, for the proposition that a new trial cannot be granted in the interest of justice unless the trial court found the jury's apportionment of negligence to be so "grossly disproportionate" as to represent a miscarriage of justice. They argue there was credible evidence to support the jury's apportionment and that it was not grossly disproportionate.

Apportionment of negligence is a matter peculiarly within the province of the jury. This court has held that ordinarily a trial court has no authority to change a jury's percentage figures. *See: Bourassa v. Gateway Erectors, Inc.* (1972), 54 Wis. 2d 176, 181, 194 N. W. 2d 602; *Britton v. Hoyt* (1974), 63 Wis. 2d 688, 218 N. W.

2d 274; *Krauth v. Quinn* (1975), 69 Wis. 2d 280, 230 N. W. 2d 839. Further, a line of cases in this state hold that the fact that a trial judge may not concur in the jury's apportionment or that a different jury might reach a different conclusion is not grounds for granting a new trial in the interest of justice. *See: Bartell v. Luedtke* (1971), 52 Wis. 2d 372, 190 N. W. 2d 145; *Dowd v. Palmer* (1944), 245 Wis. 593, 596, 15 N. W. 2d 809; *Field v. Vinograd* (1960), 10 Wis. 2d 500, 103 N. W. 2d 671.

However, it is equally well settled that a trial court may order a new trial in the interest of justice under sec. 270.49 (2), Stats.,[1] in contrast to a new trial because of error, whenever it determines that the jury's findings are contrary to the great weight and clear preponderance of the evidence and this is so even though those findings are supported by credible evidence. This rule applies equally to findings of negligence, damages, causation and comparison of negligence.[2] As the respondents point out, this court will not reverse such a decision on appeal absent a showing of a clear abuse of discretion or an erroneous application of the law.[3] The respondents also correctly point out that *Bohlman v. American Family*

[1] "270.49 **Motion for new trial.** . . . (2) Every order granting a new trial shall specify the grounds therefor. In the absence of such specification, the order shall be deemed granted for error on the trial. No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein or the memorandum decision setting forth such reasons is incorporated by reference in such order. The court may grant or deny costs to either party."

[2] *See: Spath v. Sereda* (1969), 41 Wis. 2d 448, 164 N. W. 2d 246; *Pruss v. Strube* (1968), 37 Wis. 2d 539, 155 N. W. 2d 650; *Mossey v. St. Luke's Hospital* (1974), 63 Wis. 2d 715, 218 N. W. 2d 514; *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 140 N. W. 2d 267.

[3] *Chille v. Howell* (1967), 34 Wis. 2d 491, 149 N. W. 2d 600; *Bohlman v. Nelson* (1958), 5 Wis. 2d 77, 92 N. W. 2d 345.

*Mut. Ins. Co., supra,* was not concerned with reviewing a trial court's order granting a new trial in the interest of justice. The statements there made and relied on by the appellants were made in the context of a determination whether this court should exercise its own discretionary power to grant a new trial in the interest of justice under sec. 251.09 and not the authority of a trial court under sec. 270.49 (2).

The primary limitation on the trial court's wide discretion to grant or deny a new trial in the interest of justice is the requirement that it set forth in detail the reasons in the order or in a memorandum decision containing those reasons.[4] A mere statement that a jury's finding is against the great weight and clear preponderance of the evidence, without more, is an ultimate conclusion and insufficient to support such a decision.[5]

In its memorandum decision on motions after verdict, the trial court acknowledged that it was without authority to change the jury's apportionment of negligence. It also believed that there was some credible evidence to support the jury's decision to apportion equal negligence to Schultz and Schmude. The decision to grant a new trial was based upon a thorough review of the evidence and the conclusion therefrom that Barry Schultz was more negligent than Orville Schmude as a matter of law. This procedure has been approved by this court.[6]

Specifically, the trial court noted that the credible evidence supported a finding of negligence on the part of Orville Schmude in parking on the roadway and in fail-

[4] *See: Loomans v. Milwaukee Mut. Ins. Co.* (1968), 38 Wis. 2d 656, 661, 158 N. W. 2d 318; *Jahnke v. Smith* (1973), 56 Wis. 2d 642, 203 N. W. 2d 67.

[5] *See: Tuschel v. Haasch* (1970), 46 Wis. 2d 130, 174 N. W. 2d 497; *Campbell v. Wilson* (1962), 18 Wis. 2d 22, 117 N. W. 2d 620.

[6] *See: Jahnke v. Smith, supra; Tuschel v. Haasch, supra; Hillstead v. Shaw* (1967), 34 Wis. 2d 643, 150 N. W. 2d 313.

ing to provide proper warning lights. Its conclusion that Barry Schultz' negligence exceeded that of Orville Schmude as a matter of law was expressly supported by, among others, the following reasons: (1) Schultz' operation of his automobile without glasses contrary to the restriction on his driver's license; (2) his consumption of alcohol before the accident; (3) his admission to traveling 30 miles per hour in a 25 mile per hour zone on a snowpacked highway; (4) his failure to alter the speed of his automobile upon first noticing the lights of the vehicles ahead; (5) his failure to pump his brakes or safely pass the Schmude vehicle in the face of evidence that there was room to pass and that other vehicles had safely done so earlier; (6) his admitted misjudgment as to the situation presented by the lights on the roadway ahead; and (7) his failure to observe the vehicles until he was within 144 feet of them in contrast to testimony that they were visible earlier. This evidence, the trial court concluded, warranted findings of negligence as to lookout, management and control and speed on the part of Schultz.

The appellants argue that the trial court erroneously relied on the fact that Barry Schultz may have been negligent in more respects than Orville Schmude for its conclusion that he was more negligent as a matter of law. As the appellants point out, this court has held that the apportionment of negligence is not to be based solely on the number of respects in which a party was at fault.[7] It is not apparent from the decision that the trial court merely added up and compared the number of respects in which each party could have been negligent. It appears, instead, that the decision to order a new trial and the conclusion that Barry Schultz was more negli-

[7] See: Maus v. Cook (1961), 15 Wis. 2d 203, 112 N. W. 2d 589; Taylor v. Western Casualty & Surety Co. (1955), 270 Wis. 408, 411, 71 N. W. 2d 363.

gent than Orville Schmude as a matter of law was properly based upon a consideration of the conduct of the parties as a whole.

The appellants also place reliance on the recent case of *Britton v. Hoyt* (1974), 63 Wis. 2d 688, 218 N. W. 2d 274, where this court, under somewhat similar facts, reinstated a jury apportionment of equal negligence to two drivers involved in a rear end collision. We believe *Britton* is distinguishable on both procedural and factual grounds and should not therefore control the disposition of this case.

In *Britton* the plaintiff was stopped at night beyond a small hill. It was disputed whether the car was partially on the roadway and whether the emergency flashers were operating. It was agreed, however, that the taillights were lit. The defendant struck the rear of the plaintiff's car after a preceding car had successfully avoided a collision. When the defendant first saw the taillights she thought the car was moving and when she realized it was stopped it was too late to avoid the collision. The jury found both parties 50 percent negligent and the trial court changed the comparison to 30 percent for the plaintiff and 70 percent for the defendant.

This court reversed, holding that "while a trial judge can find as a matter of law the apportionment of causal negligence is against the great weight and clear preponderance of the evidence or that the causal negligence of one actor is greater than that of another, the trial court cannot conclude that exact percentages can be so determined." *Britton* at pp. 693, 694. The court thereupon reviewed the credible evidence and determined that it supported the jury's original apportionment.

This case differs in a significant procedural respect from *Britton*. In *Britton* the trial court exceeded its authority in changing the jury's percentage figures. Here, the trial court made no attempt to change the jury's

percentage figures. It concluded, as it was entitled to do under the law, that the negligence of Schultz exceeded that of Schmude as a matter of law, that the jury's answers were contrary to the great weight and clear preponderance of the evidence, and that a new trial should be ordered in the interest of justice. Under these circumstances the test on review is abuse of discretion and this court will not reverse unless the trial judge was clearly wrong. *See: Hillstead v. Shaw, supra.* The court's independent review of the record in *Britton* followed a determination that the trial court had erred in changing the jury's apportionment answers. Under this view the similarity in facts has little bearing on the disposition of this case. Simply because this court may have reached a different conclusion on the question of whether the following driver's negligence exceeded that of the preceding driver as a matter of law is not a sufficient basis for finding an abuse of discretion.

In any event, there are significant factual differences between the two cases. In *Britton* there was no evidence that the defendant was negligent as to speed. Nor was there evidence that the following driver had been drinking or that she had failed to wear glasses contrary to a restriction on her driver's permit. Further, there was no evidence in *Britton* that the following driver was specifically aware of slippery conditions or of limited visibility in the area of the accident because of physical obstructions.

We conclude the trial court did not abuse its discretion in this case.

The appellants argue that the trial court erred in awarding costs to the third-party defendants, Thomas Stobbe and Travelers Indemnity Company. The awarding of costs in a civil proceeding is governed generally by the provisions of ch. 271, Stats. Because Stobbe and Travelers are defendants in the third party action of Schultz

and Horace Mann Insurance Company for contribution, the provisions of sec. 271.03,[8] entitled "Costs to defendant." would appear to be controlling. Under that section the defendant "shall be allowed costs to be computed on the basis of the demands of the complaint" if the plaintiff is not entitled to costs. A plaintiff is entitled to costs under sec. 271.01[9] only "upon a recovery." Because a new trial was ordered, the third-party plaintiffs did not recover in their action for contribution and a literal reading of the cited sections would appear to support the awarding of costs to the third-party defendants.

However, a persuasive argument is also made that the legislature did not intend that the awarding of costs to a defendant be mandatory whenever the plaintiff fails to recover on his claim. Rather, the statutory scheme appears to contemplate the awarding of costs only to successful parties. Where, as here, there is no final determination on the merits and the action does not end in judgment for one party or the other, neither party should be entitled to costs.

While the trial judge awarded costs to the third-party defendants, he denied a motion to enter judgment on the verdict in their favor. In the first action the trial court found Stobbe negligent as a matter of law because he parked on the wrong side of the roadway and the jury apportioned 10 percent of the causal negligence to him.

---

[8] "271.03 Costs to defendant. (1) If the plaintiff is not entitled to costs under s. 271.01 (1) or (3), the defendant shall be allowed costs to be computed on the basis of the demands of the complaint.

"(2) Where there are several defendants who are not united in interest and who make separate defenses by separate answers, if the plaintiff recovers against some but not all of such defendants, the court may award costs to any defendant who has judgment in his favor."

[9] "271.01 Costs allowed to plaintiff. (1) Except as otherwise provided in this chapter, costs shall be allowed of course to the plaintiff upon a recovery."

The order for a new trial was based solely on the trial judge's conclusion that the jury's apportionment of negligence as between the other parties was contrary to the great weight of the evidence. However, because the negligence of Stobbe will also be reconsidered in the new trial, it is possible that the new jury might apportion a greater amount of negligence to Stobbe than to Schmude, thereby making Schultz and Horace Mann Insurance Company the "successful parties" in their third-party action for contribution. Under these circumstances costs should abide the result of the new trial.

*By the Court.*—Order affirmed insofar as it grants a new trial in the interest of justice as to the liability issues; order reversed insofar as it awards costs to Thomas A. Stobbe and Horace Mann Insurance Company. Cause remanded for further proceedings.